SMITH BROTHERS WOODLAND MANAGEMENT, LLC
*v.* PLANNING AND ZONING COMMISSION OF THE
TOWN OF MONROE
(AC 25324)

Lavery, C. J., and McLachlan and Hennessy, Js.

---

Argued January 5—officially released March 15, 2005

*Frederick J. Martin*, for the appellant (defendant).

*Brian A. Lema*, for the appellee (plaintiff).

*Opinion*

McLACHLAN, J. In this certified zoning appeal, the defendant, the planning and zoning commission of the town of Monroe (commission), appeals from the judgment of the trial court sustaining the appeal of the plaintiff, Smith Brothers Woodland Management, LLC. The commission denied the plaintiff's application for a special exception permit to make improvements to its landscape mulch processing operation on real property

it owns in Monroe. On appeal to this court, the commission claims that the trial court improperly substituted its judgment for that of the commission in overruling the commission's stated reasons for rejecting the plaintiff's application. We disagree and affirm the judgment of the trial court.

The plaintiff purchased the subject property, approximately 1.54 acres of land located in two design industrial (DI) zones,[1] to operate a wholesale landscape mulch processing operation. It began operations shortly after purchasing and clearing the land of debris in 1999, but did so without approval from the commission and continued to operate following a cease and desist order from the town zoning enforcement officer. In April, 2002, the plaintiff submitted to the commission an application for a special exception permit to construct a 288 square foot office building, a paved parking area containing four parking spaces and large concrete block bins for the storage of processed mulch. The commission held a hearing at which fourteen people spoke in favor of the plaintiff's application and only one against it. The sole dissenting voice expressed concerns about a similar operation in Newtown that purportedly emitted a strong odor and also expressed concerns about the plaintiff's failure to comply with the town's cease and desist order. Following the hearing, the commission voted unanimously to reject the plaintiff's application. In a written decision, the commission listed its reasons for rejecting the application. It stated in relevant part: "1. . . . the use 'landscape mulch processing operation' is not a permitted use in either [DI] zone or upon the subject premises. . . . 3. . . . the use is not consistent with the current plan [of conservation and development]. 4. . . . the proposal is not consistent with the requirements of the zoning regulations pertaining

---

[1] The property is partially located in both the DI-1 and DI-2 zones. Both parties agree that it is the regulations governing the DI-1 zone that apply.

to the conditions of articles 12 [and] 18 for a special exception permit. 5. . . . the activity . . . could not be operated in the manner in which it is without being in violation of other provisions of the regulations. 6. . . . the type of use and activity poses a health risk to the community as it would pose a harborage for vermin and disease, and would be a generator of noxious fumes and odors. 7. Contrary to the testimonials in support of the application, the commission holds the opinion that the proposed activity is not in the best interest of the community, is not necessary for the welfare and convenience of the residents and has been proposed solely in the interest and for the convenience of the applicant and in complete disregard of the regulations."[2]

The plaintiff appealed from the commission's decision to the Superior Court, which sustained the appeal, concluding that the commission acted arbitrarily in its application of the facts to the regulations and that there was inadequate evidence in the record to conclude that the proposed use violated other regulations or posed a health risk. The court found that there was substantial evidence that the plaintiff's operation would, in fact, have a positive impact on the community. From that decision, the commission sought certification to appeal to this court, which we granted.

Preliminarily, we include a prior explanation by this court of the nature and purpose of the special exception or special permit, as it is interchangeably known. "General Statutes § 8-2 explicitly enables the use of special exceptions. A special [exception] allows a property owner to use his property in a manner expressly permit-

___

[2] The commission's second listed reason for rejecting the plaintiff's application is not an ascertainable statement of grounds to reject. It states: "Further, contrary to any assertions or representations which may or may not have been made by staff, the commission finds that such claims are not appropriate to be raised; the commission remains the final determiner of applications submitted to it."

ted by local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience and property values. . . . An application for a special permit seeks permission to vary the use of a particular piece of property from that for which it is zoned, without offending the uses permitted as of right in the particular zoning district. . . . When a special permit is issued, the affected property may be allowed an exception to the underlying zoning regulations, but it continues to be governed in the same manner as provided in the overall comprehensive plan. . . .

"The basic rationale for the special permit . . . is that while certain land uses may be generally compatible with the uses permitted as of right in a particular zoning district, their nature is such that their precise location and mode of operation must be individually regulated because of the particular topography, traffic problems, neighboring uses, etc., of the site. . . . General Statutes § 8-2 (a) authorizes municipal zoning commissions to enact regulations providing that certain . . . uses of land are permitted only after obtaining a special permit or special exception from a zoning commission . . . . General Statutes § 8-2 (a) further provides that the obtaining [of] a special permit or special exception . . . [is] subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. Thus, in accordance with § 8-2 (a), an applicant's obtaining of a special exception pursuant to a zoning regulation is subject to a zoning commission's consideration of these general factors. . . .

"The General Assembly authorized the use of special exceptions via the 1959 amendment to General Statutes § 8-2. . . . That concept represents a compromise between the relative inflexible structure of Euclidian

zoning and the impermissible favoritism, corruption and violations of the uniformity requirement that could stem from a pure case-by-case approach. Put another way, it provides a local zoning agency with some flexibility while maintaining standards applicable to all members of the municipality." (Citations omitted; internal quotation marks omitted.) *Campion* v. *Board of Aldermen*, 85 Conn. App. 820, 835–37, 859 A.2d 586 (2004), cert. granted on other grounds, 272 Conn. 920, 867 A.2d 837 (2005).

The rule of law and applicable standard of review are as follows. "When ruling upon an application for a special [permit], a planning and zoning board acts in an administrative capacity. . . . Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The [Appellate Court and] trial court [must] decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. . . . Although a zoning commission or board possesses the discretion to determine whether a proposal meets the standards established in the regulations, it lacks the discretion to deny a special permit if a proposal satisfies the regulations and statutes. . . .

"[C]ourts are not to substitute their judgment for that of the board, and . . . the decisions of local boards will not be disturbed as long as honest judgment has been reasonably and fairly made after a full hearing . . . . The trial court's function is to determine on the basis of the record whether substantial evidence has

been presented to the board to support [the board's] findings. . . . [E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . Where the board states its reasons on the record we look no further. . . . More specifically, the trial court must determine whether the board has acted fairly or with proper motives or upon valid reasons. . . . We, in turn, must determine whether the court properly concluded that the board's decision to [deny the application for a special permit] was arbitrary, illegal or an abuse of discretion. . . . The evidence, however, to support any such [decision] must be substantial . . . ." (Citations omitted; internal quotation marks omitted.) *Oakbridge/Rogers Avenue Realty, LLC* v. *Planning & Zoning Board*, 78 Conn. App. 242, 246–48, 826 A.2d 1232 (2003).

Because the commission's action must be sustained if any of its stated reasons is sufficient to support the action; *Dodson Boatyard, LLC* v. *Planning & Zoning Commission*, 77 Conn. App. 334, 338, 823 A.2d 371, cert. denied, 265 Conn. 908, 831 A.2d 248 (2003); we must address each of its reasons for rejecting the plaintiff's application.

I

The commission principally claims that the trial court improperly rejected its conclusion that the plaintiff's landscape mulch processing operation is not permitted under article XII, § 117-1202 (A) (1), of the Monroe zoning regulations. The dispute centers around subparagraph (c) of that provision, which permits the following uses in a DI zone: "The manufacture, compounding, assembling and treatment, including machining and sintering, of articles made principally from previously pre-

pared materials."[3] Specifically, the parties differ over whether the raw materials the plaintiff processes into mulch are "previously prepared materials." We disagree with the commission that the materials are not previously prepared and, accordingly, conclude that the court correctly construed the regulation as permitting the plaintiff's use.

The issue becomes one strictly of the interpretation of a zoning regulation, to which we apply the same principles of construction as we apply to a statute. *Raymond* v. *Zoning Board of Appeals*, 76 Conn. App. 222, 234, 820 A.2d 275, cert. denied, 264 Conn. 906, 826 A.2d 177 (2003). Although we ordinarily defer to a planning and zoning commission's construction of its regulations, the regulation at issue in the present case has never been subjected to judicial scrutiny, and, therefore, the commission's construction is not entitled to special deference. Id., 233. Furthermore, "[w]here more than one interpretation of language is permissible, restrictions upon the use of lands are not to be extended by implication . . . [and] doubtful language will be construed against rather than in favor of a [restriction] . . . ." (Internal quotation marks omitted.) *Balf Co.* v. *Planning & Zoning Commission*, 79 Conn. App. 626, 636, 830 A.2d 836, cert. denied, 266 Conn. 927, 835 A.2d 474 (2003).

---

[3] The plaintiff also claims that article XII, § 117-1202 (A) (1) (g), of the Monroe zoning regulations permits the proposed mulch processing operation. Subparagraph (g) provides in relevant part: "Commercial bulk storage completely contained within a building; warehousing, storage and wholesale distribution supply of raw materials, work in process, finished products, building materials and supplies, subject to [the] provision that material be stored within a building or structure and that an area equal up to 20% of the first floor square footage is permitted for outside storage in an area approved by the Commission. In the case of outside storage, all material shall be kept under permanent cover and screened from the street and adjoining properties subject to the provisions of § 117-902. . . ." Because we conclude that the plaintiff's proposed use is permitted under subparagraph (c), we need not address whether it is permitted under subparagraph (g).

The specific term we must construe to determine whether the plaintiff processes previously prepared materials is "prepared." There is evidence in the record that the raw materials the plaintiff processes at the subject property to create landscape mulch are wood, tree stumps and bark.[4] The plaintiff first sorts the materials to remove dirt and foreign objects, cuts them into movable pieces and grinds them off-site. It then brings the materials to the subject property for processing "into a finished material" for sale. The question becomes whether wood and bark chips are "prepared" when they arrive for final processing. The ordinance does not define the term, so we look to the common definition expressed in dictionaries. See *Azzarito* v. *Planning & Zoning Commission*, 79 Conn. App. 614, 623, 830 A.2d 827, cert. denied, 266 Conn. 924, 835 A.2d 471 (2003). Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) defines "prepare" as "to make ready beforehand for some purpose, use, or activity." We are convinced that wood and bark are made ready beforehand for use as landscape mulch when the plaintiff sorts, cuts and grinds them, and, as such, they are previously prepared materials. Although the previous preparation here may be crude, there is no explanation or elucidation in the regulation of the extent to which the materials must be prepared, so we must construe it against a finding of a restriction on the plaintiff's use of its land. See *Balf Co.* v. *Planning & Zoning Commission*, supra, 79 Conn. App. 636. We accordingly conclude that the plaintiff's use of its land as a landscape mulch processing operation is permitted under article XII, § 117-1202 (A) (1) (c) of the Monroe zoning regula-

---

[4] As part of its application for a special exception permit, the plaintiff submitted to the commission guidelines for soil erosion and sediment control, which provided that landscape mulch is used only with landscape plantings and existing woody vegetation, and is distinguishable from finer mulch made of decomposing grasses and leaves used in gardens and for other smaller plantings.

tions. In light of our conclusion that the plaintiff's use is specifically permitted by the regulations, no further analysis of the commission's fourth and fifth enumerated reasons for rejecting the plaintiff's application, essentially findings that the use violates the regulations generally, is necessary.

## II

We next consider whether the commission properly denied the plaintiff's application for a special exception permit because the use is inconsistent with the town's plan of conservation and development.[5] We have already concluded in part I, however, that the plaintiff's use is permitted under the regulations. "Because the overall objectives contained in the town plan must be implemented by the enactment of specific regulations, the plan itself can operate only as an interpretive tool." *Smith* v. *Zoning Board of Appeals*, 227 Conn. 71, 88, 629 A.2d 1089 (1993), cert. denied, 510 U.S. 1164, 114 S. Ct. 1190, 127 L. Ed. 2d 540 (1994).[6] To the extent that the regulations lead to results inconsistent with the future land use plan, the regulations should be amended to bring them into conformity with the plan.

## III

We consider together the commission's final two reasons for rejecting the plaintiff's application, namely, that the landscape mulch processing operation poses a health risk to the community and that it is not in the best interest of the community. We conclude that the record lacks substantial evidence to support the commission's findings.

---

[5] The town's future land use plan for its DI zones calls for "[a]reas that have developed or are intended to develop with industrial, research, and office facilities in a business park setting in a consolidated Design Industrial zone."

[6] Nothing in the plan affects our understanding of the meaning of the regulations discussed in part I.

"This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . . The substantial evidence rule is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration." (Internal quotation marks omitted.) *Bethlehem Christian Fellowship, Inc.* v. *Planning & Zoning Commission*, 73 Conn. App. 442, 458, 807 A.2d 1089, cert. denied, 262 Conn. 928, 814 A.2d 379 (2002).

The only evidence in the record of any potential for vermin, disease, fumes or odors came in the sole opposition statement at the hearing on the plaintiff's application. That witness spoke of being caught in traffic near another mulch processing operation in Newtown and experiencing discomfort because of the odors. There was no evidence, however, that the plaintiff's operation was similar in terms of the processing methods, the varieties of mulch processed or the size of the operation. There was also no evidence that, at any time during the approximately three years that the plaintiff operated its mulch processing operation prior to the hearing, there was a problem with odor or fumes. No evidence was presented of vermin or disease, either potential or actual.

The commission's conclusion that the plaintiff's operation is not in the best interest of the community is likewise not supported by substantial evidence. Again, the only evidence in the record that suggests that the operation will have a negative impact on the community is from the speaker at the hearing, who was concerned about odor. Given our previous analysis of that statement, it is clearly not substantial evidence of a deleterious impact on the community.

The judgment is affirmed.

In this opinion the other judges concurred.