ANN FAY BARRY *v.* HISTORIC DISTRICT
COMMISSION OF THE BOROUGH
OF LITCHFIELD
(AC 27545)

McLachlan, Lavine and Foti, Js.

Argued March 11—officially released July 1, 2008

*James Stedronsky*, with whom was *Robert D'Andrea*, for the appellant-appellee (defendant).

*William C. Franklin*, for the appellee-appellant (plaintiff).

*Opinion*

McLACHLAN, J. The defendant, the historic district commission of the borough of Litchfield (commission), denied the application for a certificate of appropriateness as to exterior architectural features filed by the plaintiff, Ann Fay Barry, for proposed changes to the facade of her house. On appeal from the commission's decision, the trial court sustained the plaintiff's appeal.

The commission appeals from that judgment, claiming that the court improperly determined that the plaintiff's right to fundamental fairness had been violated because a commission member, who recused himself from voting on the application, testified adversely to the proposal as an expert and as a member of the general public at the time of the public hearing. The plaintiff filed a cross appeal, claiming that the court

improperly determined (1) that her application was not automatically approved when the commission failed to comply with the time requirements set forth in General Statutes § 7-147e (b) and (2) that the recused commission member did not violate the commission's bylaws when he testified at the public hearing.

Subsequent to the filing of the appeal and cross appeal, the trial court issued an articulation, pursuant to an order of this court issued sua sponte, in which it stated that it "implicitly remanded the case to the defendant commission for a new hearing." The commission amended its preliminary statement of issues by adding the claim that this court lacks jurisdiction because the trial court's decision is not a final judgment.

We conclude that the trial court's decision is a final judgment. We also disagree with the claims raised in the commission's appeal and the plaintiff's cross appeal. Accordingly, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the issues on appeal. The plaintiff owns a single-family residence at 34 South Street in Litchfield, which is located within the borough's historic district. By application dated December 18, 2003, she sought a certificate of appropriateness from the commission for the removal of an exterior door and portico and their replacement with a window to match the existing windows on the east facade of the house. A public hearing on the plaintiff's application was scheduled for January 22, 2004.

At the beginning of that hearing, Glenn Hillman, a commissioner and the clerk of the commission, recused himself from the commission's consideration of the plaintiff's application, stating that he "retain[ed] the right to speak as an expert witness against this application." After the plaintiff's attorney made his presentation in favor of the application, the chairperson asked

for comments from those who opposed the application. At that point, Hillman began to speak before the commission. The attorney for the plaintiff objected, claiming that it was "fundamentally unfair" for Hillman to testify at the hearing because he had a personal interest in the matter. The chairperson responded that she would permit Hillman to testify "[t]o give his expert testimony in this matter, on advice of counsel." Hillman then submitted his resume as an expert in architectural matters and testified against the application. The hearing was continued to February 5, 2004.

On February 5, 2004, Hillman again recused himself from consideration of the plaintiff's application at the beginning of the public hearing. He continued to comment extensively on the application as a member of the public and as an expert in architecture. As an exhibit, Hillman submitted an eight page, single-spaced typewritten letter to the commission in which he reviewed the plaintiff's proposal in detail and specified the reasons for his opposition. He concluded with the statement that the plaintiff's application "for the removal of the door and portico should and must be denied." He read the contents of that letter into the record. Shortly thereafter, the hearing was continued to February 17, 2004.

That meeting was cancelled, and the third night of the public hearing was rescheduled to February 19, 2004. After additional testimony and exhibits were submitted to the commission, the public hearing was closed and the commission voted that same evening to deny the application at its regular meeting. The plaintiff appealed from that decision to the Superior Court, pursuant to General Statutes § 7-147i.[1]

---

[1] General Statutes § 7-147i provides in relevant part: "Any person or persons severally or jointly aggrieved by any decision of the historic district commission . . . may . . . take an appeal to the superior court for the judicial district in which such municipality is located . . . . Procedure upon such appeal shall be the same as that defined in section 8-8."

The plaintiff raised several issues in that appeal, including the claim that her application had been approved automatically because the commission failed to mail the notice of its decision within the sixty-five day period required by § 7-147e (b). She additionally claimed that she had been denied a fair hearing because Hillman, who had recused himself from hearing and deciding the matter, had testified against the plaintiff's application at the public hearing.

The court filed its memorandum of decision on January 11, 2006, in which it rejected the plaintiff's argument that her application was approved automatically. The court did conclude, however, that the plaintiff's right to fundamental fairness had been violated as a result of Hillman's extensive testimony against her application at the public hearing and, accordingly, sustained her appeal. Because that issue was dispositive of the plaintiff's appeal, the court did not address her other claims.

The defendant filed a petition for certification to appeal, claiming that the court improperly sustained the plaintiff's appeal on the basis of Hillman's participation at the public hearing. The plaintiff filed a cross petition for certification to appeal from the court's determination that her application was not approved automatically as the result of the defendant's failure to mail timely the notice of its decision. This court granted both petitions. An appeal and cross appeal were filed.

The defendant then filed a motion for articulation, requesting that the court articulate its decision by "remanding the matter to the [commission] for a new, full hearing, to be held in a manner consistent with the court's memorandum of decision." The court denied the motion, and the defendant filed a motion for review with this court. This court granted the motion but denied the relief requested. Additionally, this court's order provided: "It is further ordered, sua sponte, that

the trial court is ordered to articulate whether the court implicitly remanded the case to the defendant commission for a new hearing in light of its finding that the plaintiff is entitled to a fair hearing, and if not, then the court is ordered to articulate what relief, if any, the court afforded the plaintiff when it sustained her appeal."

The trial court filed an articulation on November 7, 2006, pursuant to this court's order, and stated that it "implicitly remanded the case to the defendant commission for a new hearing." Subsequently, on November 20, 2006, the commission filed a motion to dismiss its appeal and the plaintiff's cross appeal on the ground that the trial court's decision was not an appealable final decision. We denied that motion without argument by the parties and without a written opinion.[2] The commission has raised this jurisdictional issue in its brief on appeal.

I

Before reaching the merits of the commission's appeal and the plaintiff's cross appeal, we address the commission's claim that this court lacks subject matter jurisdiction because the court's order sustaining the plaintiff's appeal and "implicitly" remanding the case to the commission for a new hearing was not a final judgment for purposes of appeal. Citing *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 130, 653 A.2d 798 (1995), the commission argues that the judgment of remand was not final because a new hearing requires further evidentiary determinations that are not merely ministerial. We disagree.

---

[2] Although we denied the commission's motion at that time, we reconsider our previous decision as to our jurisdiction. See, e.g., *Governors Grove Condominium Assn., Inc.* v. *Hill Development Corp.*, 187 Conn. 509, 511 n.6, 446 A.2d 1082 (1982) (per curiam), overruled on other grounds by *Morelli* v. *Manpower, Inc.*, 226 Conn. 831, 834, 628 A.2d 1311 (1993).

"The right of appeal is purely statutory. It is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met. . . . Moreover, [t]he statutory right to appeal is limited to appeals by aggrieved parties from final judgments . . . . Because our jurisdiction over appeals . . . is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim. . . . Thus, unless the remand order of the trial court in [a] zoning appeal constitutes a final judgment, we are required to dismiss the commission's appeal to this court for lack of subject matter jurisdiction. *Lakeside Estates, LLC* v. *Zoning Commission*, 100 Conn. App. 695, 699, 919 A.2d 1044 (2007) (the final judgment rule applies equally to zoning appeals as to other appeals)." (Citation omitted; internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Zoning Commission*, 284 Conn. 124, 134–35, 931 A.2d 879 (2007).

Appeals from the decisions of historic district commissions are governed by § 7-147i. That statute specifically provides that the procedure to be followed in connection with such an appeal shall be the same as the procedure set forth in General Statutes § 8-8, the statute governing appeals from zoning boards and commissions. It is well settled that "the provisions of the Uniform Administrative Procedure Act [General Statutes § 4-166 et seq.] do not govern a zoning appeal; see General Statutes §§ 8-8 (o), 8-9 and 8-30g (b) [now 8-30g (f)]; it is the scope of the remand order in [a] particular case that determines the finality of the trial court's judgment." *Kaufman* v. *Zoning Commission*, supra, 232 Conn. 129.

Before discussing the specifics of the present case, it is helpful to review the somewhat confusing case law relevant to final judgments in zoning and other

administrative appeals. The first case of significance is *Watson* v. *Howard*, 138 Conn. 464, 86 A.2d 67 (1952). *Watson* involved an appeal by the plaintiff from an order of the Norwalk zoning board of appeals. The trial court sustained the appeal because of a member's improper participation in the board's decision and remanded the matter to the board for another hearing. The defendants challenged the jurisdiction of our Supreme Court to hear the appeal, claiming that the judgment of the trial court was not a final one. In concluding that the judgment was final, the Supreme Court stated: "The test of finality is whether the rights of the parties are concluded so that further proceedings cannot affect them. . . . The judgment in question met that test. *The rights of the parties, in so far as they were capable of being affected by any subsequent proceedings connected with the matter then in court, were forever concluded. Nothing further remained to be decided by the court. The appeal was terminated. The issues which it presented were all resolved.* If a new hearing should be held and if the board should again reach a conclusion adverse to the plaintiff, he would be required to institute a new appeal to the Court of Common Pleas. It follows from what we have said that the judgment was a final one from which an appeal to this court lies." (Citations omitted; emphasis added.) Id., 467–68. Even though *Watson* was decided in 1952, it has not been overruled and was cited with approval as recently as 2003 in *Doe* v. *Connecticut Bar Examining Committee*, 263 Conn. 39, 46–48, 818 A.2d 14 (2003).

In 1987, our Supreme Court again considered whether a decision was a final judgment in an administrative appeal involving a remand order for further proceedings. In *Schieffelin & Co.* v. *Dept. of Liquor Control*, 202 Conn. 405, 521 A.2d 566 (1987), the court dismissed the defendants' appeal from the trial court's ruling remanding the case to the defendant department of

liquor control. The remand order directed the department of liquor control to determine whether the plaintiff substantively had established cause for its termination of the individual defendants' distributorships. In concluding that the decision was not a final judgment, the court provided the following analysis. "Under our existing case law, we have distinguished, with reference to that question, between two kinds of administrative remands. A trial court may conclude that an administrative ruling was in error and order further administrative proceedings on that very issue. In such circumstances, we have held the judicial order to be a final judgment, in order to avoid the possibility that further administrative proceedings would simply reinstate the administrative ruling, and thus would require a wasteful second administrative appeal to the Superior Court on that very issue. See, e.g., *Watson* v. *Howard*, supra, 138 Conn. 468; *Santos* v. *Publix Theatres Corp.*, 108 Conn. 159, 161, 142 A. 745 (1928). A trial court may alternatively conclude that an administrative ruling is in some fashion incomplete and therefore not ripe for final judicial adjudication. Without dictating the outcome of the further administrative proceedings, the court may insist on further administrative evidentiary findings as a precondition to final judicial resolution of all the issues between the parties. See General Statutes § 4-183 (e). Such an order is not a final judgment." *Schieffelin & Co.* v. *Dept. of Liquor Control*, supra, 410.[3]

---

[3] The holding in *Schieffelin & Co.* has been superseded by statute for cases appealed pursuant to the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq. The legislature amended the act in 1988, explicitly providing that where the court issues a remand pursuant to General Statutes § 4-183 (j), the remand is a final judgment for purposes of appeal irrespective of the nature of the remand and the administrative proceedings that are expected to follow it.

In *Westover Park, Inc.* v. *Zoning Board*, 91 Conn. App. 125, 881 A.2d 412 (2005), this court stated that the approach set forth in *Schieffelin & Co.* had little bearing on the analysis of final judgment determinations in zoning appeals. "The provisions of the [Uniform Administrative Procedure Act] do not govern a zoning appeal. . . . Accordingly, the test for finality of *Schief-*

The next major appellate decision addressing the issue of final judgments in zoning appeals is *Kaufman* v. *Zoning Commission, supra*, 232 Conn. 122. Decided in 1995, our Supreme Court concluded that the trial court's decision, which sustained the plaintiff's appeal but remanded the case to give the commission the opportunity to impose reasonable conditions on and make reasonable changes to an affordable housing development, was an appealable final judgment. The court noted that "it is the scope of the remand order in this particular case that determines the finality of the trial court's judgment. *Eastern Connecticut Cable Television, Inc.* v. *Dept. of Public Utility Control*, 214 Conn. 609, 613, 573 A.2d 311 (1990). A judgment of remand is final if it so concludes the rights of the parties that further proceedings cannot affect them. Id., quoting *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983); see also *Schieffelin & Co.* v. *Dept. of Liquor Control*, [supra, 202 Conn. 409–11]. A judgment of remand is not final, however, if it requires [the agency to make] further evidentiary determinations that are not merely ministerial." (Internal quotation marks omitted.) *Kaufman* v. *Zoning Commission, supra*, 129–30.

In concluding that the trial court's judgment in *Kaufman* was final, our Supreme Court attached significance to two factors. First, the trial court did not order further evidentiary determinations on remand. Although it allowed the commission to hear additional evidence in order to impose reasonable conditions, the

---

*felin & Co.* is inapplicable to zoning appeals." (Citations omitted.) Id., 130. Nevertheless, in *AvalonBay Communities, Inc.* v. *Zoning Commission*, supra, 284 Conn. 137–38 n.13, our Supreme Court indicated that *Schieffelin & Co.* retains its vitality in zoning appeals. We read *AvalonBay Communities, Inc.*, as disavowing our language in *Westover Park, Inc.*, stating that *Schieffelin & Co.* is inapplicable to zoning appeals. As an intermediate court of appeals, we are bound by this decision of the Supreme Court. *Martin* v. *Plainville*, 40 Conn. App. 179, 182, 669 A.2d 1241 (1996), aff'd, 240 Conn. 105, 689 A.2d 1125 (1997).

remand did not require the commission to conduct such an inquiry. Second, and more importantly, the commission was required to approve the application. For that reason, the decision met the *Curcio* test[4] because it so concluded the rights of the parties that further proceedings could not affect them. Id., 130–31.

Following *Kaufman*, this court decided *Kobyluck* v. *Zoning Board of Appeals*, 70 Conn. App. 55, 796 A.2d 567 (2002). In *Kobyluck*, we dismissed an appeal from a decision of the trial court remanding the plaintiffs' zoning appeals to the defendant board. The plaintiffs filed appeals with the board in connection with two cease and desist orders issued by the zoning enforcement officer. Notice of the public hearing on the appeals was published in a local newspaper, but the board did not provide any personal notice of the public hearing to the plaintiffs. Neither the plaintiffs nor their attorney attended the public hearing because they had not seen the newspaper notice, and the board upheld the cease and desist orders. Id., 56–57.

The trial court concluded that the failure to provide personal notice of the public hearing to the plaintiffs violated their due process rights and remanded the matter to the board for a new hearing. In concluding that the trial court's decision was not an appealable final judgment, this court stated: "[A]fter concluding that the board's hearing was held without sufficient notice to the plaintiffs, the court remanded the matter for a new hearing at which the plaintiffs will be able to present their arguments regarding the alleged zoning violations and to introduce evidence in support thereof. Unlike the commission in *Kaufman*, the board has not been directed by the court as to how it must rule on the plaintiffs' appeals. Because the notice issue was dispositive, the court did not reach the other issues relating

[4] See *State* v. *Curcio*, supra, 191 Conn. 31.

to the merits of the plaintiffs' appeals. It is conceivable that after an adversarial hearing in which all of the relevant evidence is considered, the board may decide differently. Therefore, the court's decision has not so concluded the rights of the parties such that the further proceedings cannot affect them." Id., 59.

The commission here argues that *Kaufman* and *Kobyluck* effectively overturned or superseded *Watson*, but our Supreme Court quoted *Watson* with approval in a subsequent opinion addressing the issue of finality in administrative appeals. In *Doe* v. *Connecticut Bar Examining Committee*, supra, 263 Conn. 39, the defendant appealed and the plaintiff cross appealed from the judgment of the trial court reversing the defendant's decision not to recommend the plaintiff for admission to the bar of Connecticut and remanding the case for a new hearing before a different panel of the defendant. The plaintiff claimed that the decision was not a final judgment for purposes of appeal because of the trial court's remand order. Id., 44–45.

The bar examining committee is not an administrative agency subject to the provisions of the Uniform Administrative Procedure Act. Accordingly, the court applied the *Curcio* test. Id., 46 n.4. Under that analysis, the court concluded that the remand order was a final judgment for purposes of the appeal. "The remand order did not call for an evidentiary inquiry into an issue that [the defendant] had not previously addressed . . . but direct[ed] the [defendant] to undertake an administrative reconsideration of [an issue] upon which the [defendant] had previously ruled . . . as did the trial court in *Watson*." (Citations omitted; internal quotation marks omitted.) Id., 49.

Two years later, this court decided *Westover Park, Inc.* v. *Zoning Board*, 91 Conn. App. 125, 881 A.2d 412 (2005). In *Westover Park, Inc.*, this court dismissed an

appeal from a decision of the trial court in which it modified the conditions imposed by the board and remanded the matter to the board for further proceedings. The plaintiffs appealed from that decision, and the appeal was dismissed on the ground that it was not a final judgment. In reaching that determination, this court focused on the remand order and concluded that the trial court's order did not terminate a separate and distinct proceeding. Although the trial court purported to uphold the decision of the board, it neither dismissed nor sustained the plaintiffs' appeal. The court's remand required a new site plan to be submitted and a public hearing to be held, both of which contemplated the presentation of new evidence before the board. Id., 131–32. The trial court also stated that it would retain jurisdiction over the appeal "in the event that the parties . . . wish[ed] to contest the propriety of the zoning board's ruling on any such changes on the plans." (Internal quotation marks omitted.) Id., 132 n.7.

The most recent discussion of final judgment law as applied to zoning appeals is contained in *AvalonBay Communities, Inc.* v. *Zoning Commission*, supra, 284 Conn. 124. In *AvalonBay Communities, Inc.*, the trial court rendered judgment sustaining the plaintiff's appeal and ordered the commission "to consider changes that can reasonably be made to protect the substantial public health and safety interests" implicated by the proposed development. (Internal quotation marks omitted.) Id., 129. The court dismissed the commission's appeal for lack of subject matter jurisdiction. Id.

In reaching that conclusion, the court stated that "under *Kaufman*, a trial court's remand to a zoning commission is an appealable final judgment if it (1) does not require further evidentiary determinations by the commission or (2) dictates the outcome of the post-remand proceedings before the commission with

respect to the application at issue." Id., 138. Under the *Kaufman* analysis, the court found that the remand order in *AvalonBay Communities, Inc.*, was not an appealable final judgment. "Although the trial court's order, like the order in *Kaufman*, does not *explicitly* require the commission to make further evidentiary determinations, the trial court stated that the record before it did not contain sufficient evidence of the 'parameters' of the commission's requirements with regard to the acceptable height of the buildings, the width of the roads, and distance of the buildings to the slope. Given that the trial court conducted a plenary review of the record and found certain evidence to be lacking, its order that the commission 'specify categorically the changes reasonably necessary to protect the substantial health and safety concerns cited as reasons for its denial' implies that the trial court intended to require the commission to conduct further evidentiary proceedings on remand.

"More importantly, however, the trial court's order in this case, unlike the order in *Kaufman*, did not explicitly decide the ultimate issue in this case for the plaintiff. The trial court did not order the commission to grant the plaintiff's application, nor did it state that the commission was stripped of the power to deny the plaintiff's application. Instead, the trial court determined that the commission had not completed its duty as outlined under § 8-30g (g) because it had not shown that the public interests could not be protected by reasonable changes to the plaintiff's plan. The language of the trial court's decision leads us to conclude that it intended for the commission to provide certain parameters that the plaintiff could then use in revising its application for resubmission to the commission. At that point, the commission again would have the discretion to grant or to deny the plaintiff's application. Therefore, because the commission apparently retained its discretion with

regard to the ultimate issue in this matter, the trial court did not render a final judgment, and this court does not have subject matter jurisdiction over the commission's appeal." (Emphasis in original.) *AvalonBay Communities, Inc.* v. *Zoning Commission,* supra, 284 Conn. 139–40.

The following common features are apparent from this analysis of these cases. The courts all focused on the scope of the remand orders. In the cases in which the courts concluded that the trial court decisions were not appealable final judgments, except *Kobyluck,*[5] the remand orders required further evidentiary proceedings. In *Westover Park, Inc.,* the board granted applications for a special exception and site plan subject to twenty-five conditions. On appeal, the trial court concluded that some of those conditions required modification.[6] Although the trial court concluded that the plaintiffs had prevailed on some of their claims, additional issues relative to the conditions required further

---

[5] We acknowledge that our decision in this case departs from our conclusion with regard to finality in *Kobyluck.* At the time *Kobyluck* was decided, no previous court had considered whether the finality of a remand order in a zoning appeal requiring a new hearing on the merits should be decided under *Kaufman* or *Watson.* This is the first time for us to consider this issue, and, as explained in the body of this opinion, we hold that *Watson* applies.

[6] The remand order directed as follows: "If the defendant Starwood wishes to pursue these applications, a revised site plan should be submitted, but to the defendant zoning board itself. Section 19.3.2.c of the Stamford zoning regulations requires that changes in plans require 'further approval' of the defendant board. Only the issues of intersection improvements, traffic signals, driveway access, traffic 'calming,' a parking plan and a revision of the units in the southwest part of the subject property should be scheduled for a public hearing in order that the plaintiffs and members of the public have the opportunity to contest whether the revised plans are responsive to the conditions imposed by the defendant zoning board. In other words, the defendant zoning board imposed conditions on its approvals. These conditions should be incorporated in an amended plan to demonstrate exactly what Starwood intends to do in response to the conditions, including whether any required approvals from the city of Stamford for off-site improvements have been obtained." (Internal quotation marks omitted.) *Westover Park, Inc.* v. *Zoning Board,* supra, 91 Conn. App. 131–32.

consideration by the board that would require the taking of additional evidence. In addition, the trial court stated that it would retain jurisdiction over the appeal "in the event that the parties . . . wish[ed] to contest the propriety of the zoning board's ruling on any such changes in the plans." (Internal quotation marks omitted.) *Westover Park, Inc.* v. *Zoning Board*, supra, 91 Conn. App. 132 n.7.

Similarly, in *AvalonBay Communities, Inc.*, the trial court stated that the commission failed to carry its final burden under § 8-30g (g), the affordable housing statute, because it "failed to prove that the denial [of the plaintiff's application] was necessary as there is insufficient evidence to prove that the public interest could not be [protected] by reasonable changes to the affordable housing development plan." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Zoning Commission*, supra, 284 Conn. 133. Accordingly, the court remanded the case to the commission with an order that it "specify categorically the changes reasonably necessary to protect the substantial health and safety concerns cited as reasons for its denial." (Internal quotation marks omitted.) Id., 134.

Here, the commission focuses on the language in *Kaufman* and succeeding cases that a decision is not an appealable final judgment if the remand order requires further evidentiary determinations by the commission that are not ministerial in nature. That language, however, cannot be divorced from the factual background in those cases. The literal language must be construed and evaluated in the context of specific factual situations.

It is important to note that the case that most resembles the present case factually is *Watson*. In *Watson*, the trial court sustained the appeal because one of the board members improperly participated in the board's

decision. The court then remanded the matter to the board with direction to hold another full public hearing.[7] Our Supreme Court concluded that the decision was a final judgment because "the rights of the parties are concluded so that further proceedings cannot affect them" and that "[t]he issues which [the appeal from the board's decision] presented were all resolved." *Watson* v. *Howard*, supra, 138 Conn. 467–68. *Watson* was quoted extensively with approval as recently as 2003, after *Kaufman* and *Kobyluck*, in *Doe* v. *Bar Examining Committee*, supra, 263 Conn. 46–48.

To adopt the commission's position, by logical extension, would result in the appellate dismissal of all zoning appeals in which the trial court sustains the plaintiff's appeal but does not direct a particular action to be taken by the commission or board. Even if a trial court were to go no further than to sustain an appeal, it follows that in virtually every case the matter is "implicitly remanded" for a *new hearing* should the appellant decide to pursue the issues at the local board. We decline to adopt such a position.[8]

---

[7] It is interesting to note that the court in *Watson* concluded that the trial court should have "gone no further . . . than to sustain the appeal." *Watson* v. *Howard*, supra, 138 Conn. 470. The judgment was set aside and the case was "remanded with direction to render judgment sustaining the appeal." Id.

Here, in the initial memorandum of decision, the court concluded that Hillman's extensive testimony at the public hearing violated the plaintiff's right to fundamental fairness and simply sustained the appeal. The court "implicitly remanded the case to the defendant commission for a new hearing" in a subsequent articulation only after it was ordered to do so by this court. It did not direct or require the commission to do anything further. "Our Supreme Court has indicated that where the court considers the action of an agency illegal, arbitrary or in abuse of its discretion, the court should go no further than to sustain the appeal taken from its action, and not order a remand with direction. . . . If it does not appear as a matter of law that there is only one single conclusion that a commission could reasonably reach, a remand with direction is unwarranted." (Citation omitted.) *Timberland Development Corp.* v. *Planning & Zoning Commission*, 43 Conn. App. 606, 611–12, 684 A.2d 1216 (1996), cert. denied, 240 Conn. 902, 688 A.2d 331 (1997).

[8] We note that the following appeals to this court and the Supreme Court were decided on their merits when the trial court sustained an appeal from

A distinction must be made between an appeal in the usual civil case and an appeal in which the trial court is hearing an appeal from a local board or commission. In both types of cases the final judgment question normally is whether the trial court resolved all of the issues submitted to it.[9] In the former, that question requires examining the action taken by the trial court itself. In the latter, the trial court may not be able to resolve the issues submitted without further action by the local board or commission. By focusing only on the language used by the trial court in the administrative appeal cases (use of the word "remand") and not on the factual landscape in which it arises, it is not possible to determine whether the trial court's judgment is final.

To summarize, there are three general types of remands in administrative appeals that give rise to final judgment concerns. Two of them are analyzed in *Schieffelin & Co.* The first remand discussed in *Schieffelin & Co.* is a remand that involves a second hearing on the

a decision of a board or commission. Although the issue of jurisdiction was not raised by the parties, it could have been raised sua sponte by the court. "Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Citations omitted; internal quotation marks omitted.) *Peters v. Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005); see, e.g., *Gibbons v. Historic District Commission*, 285 Conn. 755, 941 A.2d 917 (2008); *Wilson v. Planning & Zoning Commission*, 260 Conn. 399, 796 A.2d 1187 (2002); *Smith Bros. Woodland Management, LLC v. Planning & Zoning Commission*, 88 Conn. App. 79, 868 A.2d 749 (2005); *Oakbridge/Rogers Avenue Realty, LLC v. Planning & Zoning Commission*, 78 Conn. App. 242, 826 A.2d 1232 (2003); *Nazarko v. Conservation Commission*, 50 Conn. App. 548, 717 A.2d 850 (trial court sustained appeal because commission member should have disqualified himself), cert. denied, 247 Conn. 940, 723 A.2d 318 (1998).

[9] We recognize the exceptions made for certain appeals by Practice Book §§ 61-3 and 61-4, and in cases in which the resolution of one or more but less than all of the issues raised would be dispositive.

very issue that the agency already decided. An appeal will lie from such a remand. This type of remand may be implicit, as where a trial court simply sustains an appeal without any further orders. See *Schieffelin & Co.* v. *Dept. of Liquor Control,* supra, 202 Conn. 410. The second type of remand addressed in *Schieffelin & Co.* is a remand that requires that the agency hold a new hearing on an issue that it has never before considered. In that event, the trial court's judgment may not be immediately appealed because the agency proceedings are incomplete; it has not finished adjudicating the application or petition before it. Id. The third type of remand is discussed in *Kaufman.* This type of remand, which is most often encountered in zoning cases, consists of an order that requires the agency to grant or approve a permit or other application. The remand order also addresses any conditions that may attach to the agency's action and may require further proceedings as to the conditions. If the remand as to the conditions requires a hearing at which the agency will need to exercise it discretion, the remand is not a final judgment. On the other hand, if further proceedings on the conditions will entail only ministerial determinations, the remand is a final judgment. *Kaufman* v. *Zoning Commission,* supra, 232 Conn. 130–31. Under either *Kaufman* scenario, the applicant will not be deprived of the permit or approval that it originally sought, but whether the trial court has rendered a final judgment will depend on whether the commission has completed its discretionary action.

In the present case, the trial court initially sustained the plaintiff's appeal without a remand order. When it articulated its decision pursuant to an order of this court, it "implicitly remanded the case to the defendant commission for a new hearing." The scope of that remand order determines the finality of the decision. This is not a situation in which the commission failed

to address some of the issues or did so incompletely, and the court, therefore, did not require further findings from the commission in order to resolve fully the parties' claims. The matter was completely resolved by the commission in the first instance, and the remand contemplated a new hearing on the very issue that the commission initially determined. On remand, the plaintiff is entitled to a whole new hearing if she again chooses to submit her application for a certificate of appropriateness to the commission. This remand falls within the ambit of the first type of remand discussed in *Schieffelin & Co.* and is virtually identical to the situation in *Watson*, which is the case that *Schieffelin & Co.* cited to illustrate this kind of remand.

Accordingly, we conclude that the trial court rendered a final judgment, and this court has subject matter jurisdiction over the commission's appeal and the plaintiff's cross appeal.

## II

The next issue we address is whether the plaintiff's application was approved automatically because the commission failed to provide the plaintiff with written notice of its denial within the sixty-five day period set forth in § 7-147e (b). Specifically, the plaintiff, in her cross appeal, argues that the express language of the statute requires that the commission's decision be made *and* that written notice of that decision be provided to the applicant within sixty-five days of the filing of her application. The plaintiff claims that the failure to do both within that time period results in the automatic approval of the application.[10]

---

[10] We address this issue in the plaintiff's cross appeal before we address the commission's claim pertaining to Hillman's participation at the public hearing because a finding of automatic approval would be dispositive of the parties' remaining claims.

Section 7-147e (b) provides in relevant part: "Within not more than sixty-five days after the filing of an application as required by section 7-147d, the commission shall *pass upon* such application and shall give written notice of its decision to the applicant. . . . Failure of the commission *to act* within said sixty-five days shall constitute approval and no other evidence of approval shall be needed." (Emphasis added.) The plaintiff interprets the statute to require automatic approval if written notice of the commission's decision is not provided to the applicant within sixty-five days. The commission contends that the statute requires automatic approval only if the decision is not made within sixty-five days. The trial court, in its articulation, concluded that the statute does not require the mailing of the commission's decision within the sixty-five day period.

"Issues of statutory construction raise questions of law, over which we exercise plenary review." (Internal quotation marks omitted.) *Testa* v. *Geressy*, 286 Conn. 291, 308, 943 A.2d 1075 (2008). In the present case, however, the plaintiff's claim fails even if we adopt her interpretation of § 7-147e (b). It is undisputed that the commission made its decision on February 19, 2004, which was sixty-three days after the plaintiff filed her application. It is also undisputed that the plaintiff and her counsel were at the commission's meeting on February 19, 2004, and participated in the public hearing. Immediately after the close of the public hearing on the plaintiff's application, the commission proceeded to deliberate and vote on the subject application and two other pending applications for certificates of appropriateness at its regular meeting.

The plaintiff does not claim that she was not present at the time the commission denied her application on February 19, 2004, nor does she claim that she was prejudiced by the fact that the commission mailed the notice of the denial sixty-eight days after she filed her

application. At oral argument before this court, counsel for the plaintiff stated that the claim is one of statutory violation only; the plaintiff conceded that she did not suffer any actual harm. The plaintiff, therefore, had actual notice of the commission's decision on February 19, 2004.

"[The Supreme Court] has distinguished between statutorily required published notice to the general public and statutorily required personal notice to specific individuals. We have long held that failure to give newspaper notice is a subject matter jurisdictional defect . . . and that [s]ubject matter jurisdiction cannot be waived or conferred by consent. . . . We have also long held, however, that failure to give personal notice to a specific individual is not a jurisdictional defect . . . .

"In *Schwartz* v. *Hamden*, [168 Conn. 8, 357 A.2d 488 (1975)], we discussed the different purposes of published newspaper notice and personal notice. The purpose of a personal notice statute is to give actual notice to [the person entitled to notice]. . . . Therefore, if a person has actual notice of a hearing, the failure to give mailed notice does not frustrate the purpose of the notice provision." (Citations omitted; internal quotation marks omitted.) *Lauer* v. *Zoning Commission*, 220 Conn. 455, 461–62, 600 A.2d 310 (1991); see also *Delfino* v. *Planning & Zoning Commission*, 30 Conn. App. 454, 459, 620 A.2d 836 (1993).

The plaintiff had actual notice of the commission's decision to deny her application for a certificate of appropriateness within sixty-five days of the filing of her application and timely appealed from that decision to the Superior Court. We conclude, therefore, that she is not statutorily entitled to an automatic approval of her application under § 7-147e (b).

## III

The commission claims that the court improperly determined that Hillman's testimony at the public hearing violated the plaintiff's right to fundamental fairness. The commission argues that Hillman properly could recuse himself from acting as a commission member in connection with the plaintiff's application and yet retain the right to speak against it as an expert in architectural matters and as a member of the general public. We disagree.[11]

In reaching its conclusion, the court made the following findings. Hillman "appeared as a witness at the public hearing and testified at great length, purportedly as an expert in historic restoration. . . . He made a physical inspection of the property and offered testimony which was at variance with the plaintiff's position. He offered photographs and opinions which were in direct opposition to the plaintiff's experts. He questioned the plaintiff's expert from the audience. . . . He cited the Connecticut statutes and gave the commission legal advice on the obligations and rights of the commission." The commission does not challenge any of those findings on appeal.

In determining whether a land use commission has violated an applicant's right to fundamental fairness, "[w]e generally employ a deferential standard of review to [its] actions . . . . [C]ourts are not to substitute their judgment for that of the board, and . . . the decisions of local boards will not be disturbed as long as honest judgment has been reasonably and fairly made after a full hearing. . . . [T]he plaintiff challenges not

---

[11] Because we conclude that the court properly determined that Hillman's testimony at the public hearing violated the plaintiff's right to fundamental fairness, we do not address the plaintiff's claim on her cross appeal that Hillman's conduct violated the commission's bylaws.

the ultimate decision of the board but, rather, the fundamental fairness of the board's hearing. The question of whether the board violated the plaintiff's right to fundamental fairness in that administrative proceeding presents a question of law over which our review is plenary. . . .

"While proceedings before zoning and planning boards and commissions are informal and are conducted without regard to the strict rules of evidence . . . they cannot be so conducted as to violate the fundamental rules of natural justice. . . . Fundamentals of natural justice require that there must be due notice of the hearing, and at the hearing no one may be deprived of the right to produce relevant evidence or to cross-examine witnesses produced by his adversary. . . . In short, [t]he conduct of the hearing must be fundamentally fair." (Citations omitted; internal quotation marks omitted.) *Megin* v. *Zoning Board of Appeals*, 106 Conn. App. 602, 607–609, 942 A.2d 511 (2008).

We have long recognized this common-law right to fundamental fairness in administrative hearings. See *Grimes* v. *Conservation Commission*, 243 Conn. 266, 273–74, 703 A.2d 101 (1997). "Judicial review of administrative process is designed to assure that administrative agencies act on evidence which is probative and reliable and act in a manner consistent with the requirements of fundamental fairness." *Feinson* v. *Conservation Commission*, 180 Conn. 421, 429, 429 A.2d 910 (1980). Further, we have repeatedly emphasized that "[n]eutrality and impartiality of members are essential to the fair and proper operation of . . . [zoning] authorities." (Internal quotation marks omitted.) *Fletcher* v. *Planning & Zoning Commission*, 158 Conn. 497, 507, 264 A.2d 566 (1969). In reviewing the challenged conduct of public officials, "fairness and impartiality are fundamental." *Low* v. *Madison*, 135 Conn. 1, 7, 60 A.2d 774 (1948).

Public policy requires that a member of a public board or commission refrain from placing himself or herself in a position in which personal interest may conflict with public duty. See *Thorne* v. *Zoning Commission*, 178 Conn. 198, 204 n.2, 423 A.2d 861 (1979); *Low* v. *Madison*, supra, 135 Conn. 8. "A personal interest has been defined as an interest in either the subject matter or a relationship with the parties before the zoning authority impairing the impartiality expected to characterize each member of the zoning authority. A personal interest can take the form of favoritism toward one party or hostility toward the opposing party; it is a personal bias or prejudice which imperils the open-mindedness and sense of fairness which a zoning official in our state is required to possess." (Internal quotation marks omitted.) *Thorne* v. *Zoning Commission*, supra, 204–205.

The issue of personal interest generally arises in the context of whether a commission member should be disqualified from hearing and deciding a particular application pending before the commission. Most of our appellate case law focuses on the refusal of a member to recuse himself or herself from participating in the public hearing as a member of the commission. In this case, Hillman did recuse himself from acting on the plaintiff's application but then participated at the public hearing as a member of the general public and as an expert in voicing his opposition to it.

There is one case, *Cioffoletti* v. *Planning & Zoning Commission*, 209 Conn. 544, 552 A.2d 796 (1989), cited by the commission, that is factually similar to the present case. In *Cioffoletti*, a commission member disqualified himself from all phases of the proceedings involving the plaintiffs' application to expand their mining operation. At the public hearing, however, his wife read into the record a letter expressing his and her opposition to the proposed expansion. Our Supreme Court concluded

that his remarks at the hearing, as voiced through his wife, did not constitute "participation" in the hearing or decision of the commission as prohibited by General Statutes § 22a-42 (c).[12] *Cioffoletti* v. *Planning & Zoning Commission*, supra, 557.

*Cioffoletti* is not supportive of the commission's position under the circumstances of this case. The plaintiffs in *Cioffoletti* claimed only that the commission member's conduct violated the strictures of § 22a-42 (c); id.; they did not claim that their right to fundamental fairness had been violated as the result of his participation. Accordingly, no fundamental fairness analysis was undertaken as to that claim. In the present case, that issue was squarely presented and addressed by the court.

Even though there are no appellate Connecticut cases directly on point, the reasoning in the cases addressing situations in which commission members should have disqualified themselves but failed to do so, thereby rendering the decisions invalid, is instructive. "The bright line rule is that decisions of zoning authorities should be overturned if they have not been reached fairly and with proper motives. . . . Public office is a trust conferred by public authority for a public purpose. The status of each member of the commission forbids him from placing himself in a position where private interests conflict with his public duty. . . . The law does not require proof that the interested commissioner actually acted wrongfully. The evil lies not in the wrongful act of the commissioner but rather in the creation of a situation tending to weaken public confidence and to undermine the sense of security of individual rights

---

[12] General Statutes § 22a-42 (c) provides in relevant part: "No member or alternate member of such board or commission shall participate in the hearing or decision of such board or commission of which he is a member upon any matter in which he is directly or indirectly interested in a personal or financial sense. . . ."

which the property owner must feel assured will always exist . . . ." (Citations omitted; internal quotation marks omitted.) *Brunswick* v. *Inland Wetlands Commission*, 29 Conn. App. 634, 638–39, 617 A.2d 466 (1992). "The test is not whether the personal interest does conflict but whether it reasonably might conflict." (Internal quotation marks omitted.) *Nazarko* v. *Conservation Commission*, 50 Conn. App. 548, 552, 717 A.2d 850, cert. denied, 247 Conn. 940, 723 A.2d 318 (1998).

It can hardly be disputed that Hillman had a personal interest in the plaintiff's application.[13] He recused himself from participating as a commission member at the beginning of the public hearing but retained his "right to speak as an expert witness against [the] application." As soon as Hillman began commenting as a member of the audience at the public hearing, counsel for the plaintiff objected to his participation. The chairperson indicated that she would allow him to give expert testimony. Hillman then proceeded to voice his opposition to the application through "extensive testimony" and the submission of various exhibits. It is apparent that the commission relied on his testimony because he was referenced in the decision to deny the certificate of appropriateness.

In its memorandum of decision, the court stated: "My reading of . . . Hillman's testimony leads me to conclude that it would have been very difficult for the other commissioners not to have been unfairly influenced by his testimony. It is unlikely that the other commissioners were able to give the testimony of the plaintiff's expert witnesses the same consideration that they gave to the testimony of their fellow commissioner, Commissioner Hillman. It is not simply that . . . Hillman

---

[13] We note that Hillman participated and voted as a commission member in several previous meetings and hearings held between May and December, 2003, involving the plaintiff's applications for permission to make a variety of exterior changes to this same property, including the removal of the door and portico.

opposed the application. It is that he placed his professional reputation at stake in fervent opposition to the application. It would have been very uncomfortable for the other commissioners to have approved the application and then [to have] continued to work with . . . Hillman as members of the same deliberative body."

The commission argues that the record does not reflect that any commissioner was "unduly influenced" by Hillman's testimony or that Hillman "had either collegial or other control over the commission." That is not the test, however, to determine whether a personal interest conflicts with public duty. As we previously noted, "[t]he test is not whether the personal interest does conflict but whether it *reasonably might* conflict." (Emphasis added; internal quotation marks omitted.) *Nazarko* v. *Conservation Commission*, supra, 50 Conn. App. 552. The persuasiveness of his testimony in influencing his fellow commissioners need not be known. "The evil lies in its presence to any degree. . . . However fair [the] proceedings may, in actuality, have been, it would be difficult if not impossible to satisfy [the individuals appealing from the commission's decision] that they had received a fair and impartial hearing." *Low* v. *Madison*, supra, 135 Conn. 9–10.

In the present case, it is apparent that the commission relied, at least to some extent, on Hillman's testimony because the commission incorporated some of his testimony into the denial of the plaintiff's application. "Zoning restrictions limit the individual's free use of his real estate in the interest of the general public good. The administration of power of that nature . . . demands the highest public confidence." Id., 9. Hillman's conduct undermined that confidence, and it deprived the plaintiff of her right to a fair and impartial hearing.

The judgment is affirmed.

In this opinion the other judges concurred.