******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GARDEN HOMES MANAGEMENT
CORPORATION ET AL. *v.*
TOWN PLAN AND ZONING
COMMISSION OF THE
TOWN OF FAIRFIELD
(AC 40519)

Keller, Moll and Lavery, Js.

*Syllabus*

The defendant Town Plan and Zoning Commission of the Town of Fairfield appealed to this court from the judgment of the trial court sustaining the appeal of the plaintiffs, G Co. and R Co., from the decision of the commission denying G Co.'s application to construct an affordable housing development. The commission denied G Co.'s application on several grounds, including that the record indicated that the proposed single entry, twenty foot access way width was insufficient and that it would not provide fire trucks sufficient space to turn around on-site. The plaintiffs appealed from that decision to the trial court, which reviewed the record as to each of the commission's grounds for denial to determine whether the commission had satisfied its burden under the applicable statute (§ 8-30g). The court recognized that although a twenty-four foot wide access way and a secondary point of entrance would be desirable, they were not necessary or required. The court concluded that the commission's concerns as to the twenty foot access way width did not outweigh the town's need for affordable housing, but, in the absence of a secondary access way, it was concerned that the site contained no area with adequate turnaround space for large vehicles, including fire trucks, and that such vehicles could exit only by backing up the full length of the access way. The court acknowledged that G Co. had attempted to assuage the commission's concerns regarding that issue by offering a sketch that proposed an expanded turnaround area, and it remanded the issue of G Co.'s most recent redesign of the access way and apartment building for due consideration by the commission. The commission accepted new evidence during the public hearing, and it denied G Co.'s revised site plans. Subsequently, the trial court rendered judgment sustaining the plaintiffs' appeal, from which the commission, on the granting of certification, appealed to this court. The commission claimed that it had satisfied its burden pursuant to § 8-30g on the basis of concerns as to fire, pedestrian and traffic safety, that G Co.'s revised site plans, viewed in their entirety, did not sufficiently address the commission's prior concerns and raised new concerns as to fire safety and pedestrian and traffic safety that outweighed the town's need for affordable housing and, thus, that its denial was necessary to protect public safety. *Held* that the trial court properly sustained the plaintiffs' appeal: the record was replete with evidence of the need for affordable housing in the town, which had persisted for decades, the trial court, in addressing G Co.'s initial application, properly concluded that concern as to the inability for large vehicles to turn around upon exiting the site was the only concern that potentially could have outweighed the town's need for affordable housing and that the remaining concerns did not outweigh the town's need for affordable housing, as the record reflected that an access way width of twenty feet was adequate to comply with national fire safety standards, the commission did not prove that its denial of G Co.'s application was necessary to protect substantial public interests, the commission's concern regarding the lack of sidewalks was merely theoretical, the commission's concern as to the ratio of parking spaces per dwelling unit was merely a concern as to the convenience of parking, and a secondary access way was not necessary to adhere to national fire safety standards; moreover, the trial court properly declined to review certain evidence that it determined exceeded the scope of its remand order, as the court had issued a limited remand order directing the commission to consider potential redesigns

to the turnaround area and the commission had jurisdiction on remand only over that issue, and the commission's claim that it had satisfied its burden under § 8-30g to show that its concerns on remand as to G Co.'s revised application outweighed the town's need for affordable housing was unavailing, as the court, which, upon review of G Co.'s revised site plans, had characterized the commission's concerns as to emergency vehicle maneuverability within the turnaround area as mere concern that some maneuvering would be required before such vehicles can turn around, was not convinced by the commission's concern that an emergency vehicle might not be able to turn around successfully, was persuaded that the revised turnaround area constituted a health and safety improvement to the plan and, thus, concluded that the commission's concerns as to maneuverability within the turnaround area did not outweigh the need for affordable housing, and this court would not disturb the trial court's determination as to the adequacy of the revised turnaround area.

Argued December 5, 2018—officially released August 13, 2019

*Procedural History*

Appeal from the decision of the defendant denying the named plaintiff's application for approval of an affordable housing development, brought to the Superior Court in the judicial district of Fairfield and transferred to the judicial district of Hartford, Land Use Litigation Docket, where the matter was tried to the court, *Bates, J.*, which issued a memorandum of decision reversing the decision of the defendant and remanding the matter to the defendant for further proceedings; thereafter, Garden Homes Residential, L.P., was substituted as a plaintiff; subsequently, the court rendered judgment sustaining the plaintiffs' appeal, from which the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Melinda A. Powell*, with whom were *Sarah L. Wilber* and, on the brief, *Cindy M. Cieslak*, for the appellant (defendant).

*Daniel J. Krisch*, with whom were *Mark K. Branse* and, on the brief, *Kenneth R. Slater, Jr.*, for the appellees (plaintiffs).

*Opinion*

LAVERY, J. The defendant, the Town Plan and Zoning Commission of the Town of Fairfield (commission), appeals from the judgment of the Superior Court sustaining the appeal of the plaintiffs Garden Homes Management Corporation (Garden Homes) and Garden Homes Residential, L.P.,[1] from the decision of the commission denying Garden Homes' application to construct an affordable housing development. On appeal, the commission claims that (1) reversing the court's decision will serve the public interest; (2) the court improperly declined to review certain evidence presented to the commission on remand; (3) the commission has satisfied its burden under General Statutes § 8-30g on the basis of fire safety deficiencies in Garden Homes' site plans; and (4) the commission has satisfied its burden under § 8-30g on the basis of pedestrian and traffic safety concerns. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. Pursuant to the Connecticut Affordable Housing Land Use Appeals Act, General Statutes § 8-30g et seq., Garden Homes applied for permission to build a ninety-five unit apartment building that would accommodate affordable housing units.[2] The proposed development would be situated on a combined 2.9 acres of abutting lots located at 92 and 140 Bronson Road in the Southport section of Fairfield. This site is bounded to the north by Interstate 95, to the east by the Mill River, to the south by Metro-North Railroad tracks, and to the west by a private residence. Consequently, the buildable area is constrained by the nearby highway and by wetlands restrictions that prohibit encroaching upon the river.

Cognizant of these limitations, Garden Homes consulted Fairfield's fire marshal, William Kessler, early in the design process for direction as to compliance with safety standards. Kessler confirmed that Garden Homes' projected twenty foot wide access way would be the "minimally acceptable parameter" to provide for fire truck safety and functionality. Garden Homes, thus, submitted to the commission initial site plans that proposed a single entry, twenty foot wide access way, among other features that would make the development suitable to accommodate all ninety-five units within the buildable area.

The commission held an initial public hearing on Garden Homes' application on July 8, 9, 15, and 16, 2014. Joseph Versteeg, Garden Homes' fire code expert, testified at the public hearing that the twenty foot wide access way was adequate for fire safety purposes. He stated in relevant part: "[According to] the Technical Committee of [National Fire Protection Association, Standard 1 (NFPA 1)] and [National Fire Protection

Association (NFPA)] Technical Committee members, as well as the NFPA staff, the reason for the twenty foot road width is that it facilitates two-way traffic, it also will facilitate one fire truck to pass another fire truck that has stopped either to connect with a hydrant or for whatever reason."

Laura Pulie, Fairfield's senior civil engineer, cautioned that the proposed twenty foot wide access way could be "too narrow for an emergency vehicle to pass into the site/building location, should a vehicle park along the driveway despite 'No Parking or Fire Lane' signs." Accordingly, Pulie recommended increasing the proposed access way width by four feet.

An additional concern addressed at the public hearing pertained to the adequacy of the proposed fire truck turnaround area. The site plans proposed that the 300 foot long, twenty foot wide access way would be the only route to enter and exit the property, which dead-ended at the apartment building. The concern, therefore, was that fire trucks would be able to exit the site only by backing up the full length of the access way. David Spear, a traffic engineer retained by Joel Green, attorney for the Lower Bronson Neighborhood Alliance in opposition to Garden Homes' proposal, opined: "The turnaround right here is the weak link . . . once [a fire truck] get[s] in here, they're stuck. They have to back out and back all the way out of the site." Additionally, Richard Felner, Fairfield's former fire chief, testified: "[I]f other emergency vehicles get [to the proposed access way] first, for example, an ambulance should get there first, our rescue truck comes in second, to get the ambulance back out, we have to back a truck out, and we'd have to back the ambulance out. . . . To make that swing with our ladder truck is almost, as I see it in looking at the plan, [i]s almost impossible . . . ."

During its rebuttal on the final night of the public hearing, Garden Homes submitted a revised sketch that eliminated four parking spaces and three units to afford larger vehicles sufficient space to turn around at the end of the access way. The commission did not consider this submission in reaching its decision.

After the close of the public hearing, the commission voted to deny Garden Homes' application and unanimously granted a motion to adopt, as its collective grounds for denial, the recommendations set forth in a staff report presented to the commission, with the addition of a statement that Garden Homes had not demonstrated that its application reflected adequate sewage capacity. Subsequently, on July 24, 2014, a clerk for the commission sent Garden Homes' counsel a letter that memorialized the commission's statement. The letter noted, inter alia, that "the record indicates that the [twenty] foot paved [access way] width is insufficient for the number of dwelling units proposed and for the

length of the singular access point to the proposed development." The letter also indicated that the twenty foot width of the access way would not provide fire trucks sufficient space to turn around on-site. The clerk's letter stated that the commission expressly made the following three findings: "1. There is sufficient evidence in the record to support a finding that the proposed development would pose substantial risks to public interests in health and safety. 2. Those public interests clearly outweigh the need for affordable housing. 3. There are no reasonable conditions of approval that can be made to protect those public interests. Therefore the application is denied."[3]

The original plaintiffs, Garden Homes, Sandra Conner, and Richard Irwin; see footnote 1 of this opinion; timely appealed from that decision to the Superior Court. In its September 10, 2015 memorandum of decision, the court reviewed the record as to each of the commission's grounds for denial to determine whether the commission had satisfied its burden under § 8-30g. The court began by noting that each of the concerns set forth in the commission's letter pertained to " 'substantial public interests in health, safety, or other matters' that are generally 'supported by sufficient evidence in the record.' "

The court then reviewed the commission's concerns as to several specific features of Garden Homes' site plans to determine whether that given feature would pose such a health or safety hazard as to outweigh the need for affordable housing. The court first reviewed the adequacy of the proposed twenty foot wide access way. Recognizing that a twenty-four foot wide access way would be desirable, the court nonetheless concluded that such an access way was not required. It reasoned that under applicable fire codes twenty feet was "the minimum acceptable width . . . and that level of compliance should generally be sufficient for an affordable housing project."[4] It further reasoned that even if twenty feet deviated from applicable standards, such deviation would not "create a public health or safety concern that outweighs the need for affordable housing in the community." On balance, the court, therefore, concluded that the commission's concerns as to the twenty foot access way width did not outweigh Fairfield's need for affordable housing.

The court also assessed the commission's concerns as to the proposed single entrance drive onto the site. As in its assessment of the access way width, the court acknowledged that a secondary point of entrance would be desirable but concluded that it would not be necessary. It noted that neither the NFPA nor the American Association of State Highway and Transportation Officials (AASHTO) codes would require multiple means of access to accommodate Garden Homes' proposed site plans.[5] Thus, on balance, the court concluded that

"the single access [way] . . . should be sufficient for an affordable housing project." Although the court determined that a secondary access way was not necessary, it nonetheless was concerned that the site otherwise contained no area with adequate turnaround space for fire trucks, among other large vehicles. Such vehicles, therefore, could exit only by backing up the full length of the access way.

At the same time, the court acknowledged that Garden Homes had attempted to assuage the commission's concerns on this issue by offering a sketch that proposed an expanded turnaround area, as well as a decrease in the total number of units. The court opined that this concern adequately could be resolved with site plan revisions and, therefore, "remand[ed] the issue of the [plaintiffs'] most recent redesign of the access way and apartment building . . . for due consideration by the commission." The court additionally noted that Garden Homes "should submit to the commission a fully engineered site plan, indicating the provision of the turning radii necessary to allow these and other large vehicles to turn around and exit the site with minimal reverse travel, both via the elimination of four parking spaces and three units, as [Garden Homes had] proposed [during rebuttal before the commission], and by alternative means."[6]

On remand, Garden Homes submitted revised site plans to the commission, in which it proposed (1) reducing the number of housing units from ninety-five to ninety-one, and (2) replacing four parking spaces with a fire lane that would serve as a turnaround area for fire trucks and other large vehicles. The revised site plans also contained engineered turning movement counts, indicating that the largest fire truck of the Fairfield Fire Department (department) could turn around in this area by making a four count W shaped turning movement.

At the outset of the public hearing that was held on May 24, 2016, before the commission on Garden Homes' revised application, Garden Homes contended that the court's remand limited the commission's review to the issue of the revised turnaround area. The commission, however, noted that the court determined that the commission's concerns as to Garden Homes' initial site plans pertained to substantial interests in public health and safety. The commission, therefore, interpreted the court's remand order more broadly as direction to evaluate Garden Homes' revised plans for new health and safety concerns pertaining to the department's ability to access the proposed building and to enter and exit the site. Accordingly, the commission accepted new evidence during the public hearing on the basis of that interpretation.

Such new evidence included a report prepared by Scott Bisson (Bisson report), the department's assistant

chief, on Garden Homes' revised site plans, which reiterated and elaborated on the department's prior concerns as to the access way width and lack of a secondary entrance to the development, matters upon which the court already had ruled. The Bisson report also considered several matters beyond the turnaround area.[7] Fire Chief Denis McCarthy spoke at the public hearing and elaborated on the opinions set forth in the Bisson report. In light of that evidence, the commission considered whether "there is support to make findings different from those made in the initial application and, if there is not, are there reasonable changes that could be made to protect public interests in health and safety."

A clerk for the commission sent Garden Homes' counsel a letter memorializing the commission's grounds for denial.[8] The commission listed several points from McCarthy's testimony arguing that Garden Homes' revised plans posed fire safety concerns, namely: the department must be able to access the building; lack of secondary access way; no area of refuge during an emergency; residents will flee the property during an emergency; up to ninety-five cars could be leaving at the same time; based on McCarthy's experience, he expects to respond to an emergency approximately twenty-four times annually, or about twice per month, and all five of Fairfield's fire stations would send responders; the department will be on-site for hours; the ladder truck will not be able to access the roof; the turnaround area will not help the department access the building; despite the revised turnaround area, McCarthy opined that the plans were not safe; and McCarthy did not believe there was any alternative way to address the department's concerns.[9] The commission, therefore, concluded that Garden Homes' revised plans would pose substantial risks to public interests in health and safety, which outweighed the need for affordable housing, and that no reasonable conditions of approval could protect those interests.[10] Accordingly, the commission denied Garden Homes' revised site plans.

The trial court addressed that denial in a memorandum of decision dated March 3, 2017, concluding that the commission's stated concerns pertained to matters upon which the court previously had ruled and did not pertain to the subject of the court's limited remand. Additionally, the court determined that none of those concerns outweighed the need for affordable housing. Accordingly, the court sustained the plaintiffs' appeal and ordered the commission to approve Garden Homes' revised application and issue the requested permit. The commission then filed a petition for certification to appeal pursuant to General Statutes § 8-8 (o), which this court granted. Additional facts and procedural history will be set forth as needed.

I

We begin by setting forth guiding principles of law

as to our jurisdiction over the present appeal. "Because our jurisdiction over appeals . . . is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim. . . . Thus, unless the remand order of the trial court in [a] zoning appeal constitutes a final judgment, we are required to dismiss the commission's appeal to this court for lack of subject matter jurisdiction. . . . [I]t is the scope of the remand order in [a] particular case that determines the finality of the trial court's judgment." (Citations omitted; internal quotation marks omitted.) *Barry* v. *Historic District Commission*, 108 Conn. App. 682, 688, 950 A.2d 1, cert. denied, 289 Conn. 942, 959 A.2d 1008, and cert. denied, 289 Conn. 943, 959 A.2d 1008 (2008). "Determining the scope of a remand is a matter of law . . . [over which] our review is plenary." (Internal quotation marks omitted.) *State* v. *Tabone*, 301 Conn. 708, 713–14, 23 A.3d 689 (2011).

When the court's remand order dictates the outcome of the case, the court's decision "so concludes the rights of the parties that further proceedings cannot affect them. . . . A judgment of remand is not final, however, if it requires [the agency to make] further evidentiary determinations that are not merely ministerial." (Citations omitted; internal quotation marks omitted.) *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 130, 653 A.2d 798 (1995). When the court's remand order does not decide the outcome of the case and allows the commission to retain discretion to deny the application, a reviewing court does not have subject matter jurisdiction. *AvalonBay Communities, Inc.* v. *Zoning Commission*, 284 Conn. 124, 139–40, 931 A.2d 879 (2007) (because court remanded case to commission with instruction to consider certain factors and, therefore, implicitly required commission to conduct further evidentiary hearings, court order did not decide outcome of case, and commission retained discretion to grant or deny application and, therefore, initial memorandum of decision was not final judgment).

In the present case, the court, in its initial decision, expressly concluded that the twenty foot access way width and the single entrance complied with national fire safety standards and that neither of those two features posed concerns that outweighed the need for affordable housing. Additionally, the court expressly concluded that neither the lack of sidewalks nor the commission's concerns as to the ratio of parking spaces per unit outweighed Fairfield's need for affordable housing. As to the proposed turnaround area, however, the court determined that "[t]he ability of [fire trucks] to enter and turn around in the parking lot is an issue of health and safety. The ability of moving and large delivery trucks to do the same is an issue of health and safety to a lesser degree but should also be reviewed." The court, accordingly, issued a remand order that was

limited in scope. It remanded the matter to the commission with direction to consider potential redesigns to the turnaround area that would "allow . . . large vehicles to turn around and exit the site with minimal reverse travel . . . ." At that point, the court had not issued a final judgment, as the commission was required to make evidentiary determinations as to the adequacy of potential redesigns to the turnaround area. See *Kaufman* v. *Zoning Commission*, supra, 232 Conn. 130 ("[a] judgment of remand is not final, however, if it requires [the agency to make] further evidentiary determinations that are not merely ministerial" [internal quotation marks omitted]); *Barry* v. *Historic District Commission*, supra, 108 Conn. App. 690 (no final judgment when trial court remands for additional administrative evidentiary findings as precondition to final judicial resolution). Given the court's limited remand order, the only remaining matter for the commission to consider was the adequacy of the turnaround area at the end of the access way. See *West Haven Sound Development Corp.* v. *West Haven*, 207 Conn. 308, 312, 541 A.2d 858 (1988) (lower court should only review matters within scope of remand order).

Despite the court's limited remand order, the commission reevaluated Garden Homes' revised application for any potential health and safety risk that the turnaround area could pose. The commission also accepted evidence that raised issues beyond the turnaround area itself and then incorporated this new evidence into its collective statement of denial.

When the trial court addressed the decision of the commission on remand, it concluded that the commission exceeded the bounds of the limited remand and that none of these concerns outweighed Fairfield's need for affordable housing. The court stated: "To the extent the [c]ommission has raised any new health and safety concerns, the court finds those concerns do not outweigh [Fairfield's] need for affordable housing." The court, accordingly, remanded the case with instruction to grant Garden Homes' requested permit. Consequently, the court issued an appealable final judgment. See *Kaufman* v. *Zoning Commission*, supra, 232 Conn. 131 (court's judgment requiring commission to approve plaintiff's application was final judgment).

The commission now appeals from this final judgment, which encompasses both of the court's memoranda of decision. In reviewing the court's rulings pursuant to § 8-30g, we, therefore, will consider the evidence before the commission during both the initial and remand hearings.

## II

The commission claims that it has satisfied its burden pursuant to § 8-30g on the basis of concerns as to fire safety and pedestrian and traffic safety. It contends

that Garden Homes' revised site plans, viewed in their entirety, did not sufficiently address the commission's prior concerns and raised new concerns as to fire safety and pedestrian and traffic safety that outweigh Fairfield's need for affordable housing. The commission, thus, contends that its denial was necessary to protect public safety. We disagree.

"[Although the] commission remains the finder of fact and any facts found are subject to the sufficient evidence standard of judicial review . . . th[e] application of the legal standards set forth in § 8-30g (g) . . . to those facts is a mixed question of law and fact subject to plenary review." (Internal quotation marks omitted.) *JAG Capital Drive, LLC* v. *Zoning Commission*, 168 Conn. App. 655, 668, 147 A.3d 177 (2016). "The parameters of our review of an affordable housing appeal are circumscribed by § 8-30g (g)." *Brenmor Properties, LLC* v. *Planning & Zoning Commission*, 162 Conn. App. 678, 693, 136 A.3d 24 (2016), aff'd, 326 Conn. 55, 161 A.3d 545 (2017). Section 8-30g (g)[11] provides: "Upon an appeal taken under subsection (f) of this section, the burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission, that the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record. The commission shall also have the burden to prove, based upon the evidence in the record compiled before such commission, that (1) (A) the decision is necessary to protect substantial public interests in health, safety or other matters which the commission may legally consider; (B) such public interests clearly outweigh the need for affordable housing; and (C) such public interests cannot be protected by reasonable changes to the affordable housing development, or (2) (A) the application which was the subject of the decision from which such appeal was taken would locate affordable housing in an area which is zoned for industrial use and which does not permit residential uses; and (B) the development is not assisted housing. If the commission does not satisfy its burden of proof under this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it."

As the commission acknowledges in its brief, Garden Homes' application required the commission to weigh its concerns as to fire safety and pedestrian traffic against the need for affordable housing. The parties agree that both interests constitute matters of public concern. The central issue in this case, therefore, is whether Fairfield's need for affordable housing outweighs the health and safety concerns presented to the commission.

Section 8-30g (g) "requires the town, not the appli-

cant, to marshal the evidence supporting its decision and to persuade the court that there is sufficient evidence in the record to support the town's decision and the reasons given for that decision." *JPI Partners, LLC* v. *Planning & Zoning Board*, 259 Conn. 675, 688, 791 A.2d 552 (2002). The commission maintains that it has satisfied its burden. The court was not convinced.

The commission's decision is subject to the twofold standard of review embodied in § 8-30g (g). *JAG Capital Drive, LLC* v. *Zoning Commission*, supra, 168 Conn. App. 667. "First, a reviewing court must determine whether the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record. . . . Specifically, the court must determine whether the record establishes that there is more than a mere theoretical possibility, but not necessarily a likelihood, of a specific harm to the public interest if the application is granted. . . . Because the sufficient evidence standard applicable to affordable housing appeals imposes a lesser burden than substantial evidence, that burden is minimal. A land use agency simply must establish that something more than a mere theoretical possibility of harm to the public interest exists." (Citations omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) *Brenmor Properties, LLC* v. *Planning & Zoning Commission*, supra, 162 Conn. App. 694–96.

"If that standard is met, the reviewing court then must conduct a plenary review of the record and determine . . . whether the commission's decision was necessary to protect substantial interests in health, safety or other matters that the commission legally may consider, whether the risk of such harm to such public interests clearly outweighs the need for affordable housing, and whether the public interest can be protected by reasonable changes to the affordable housing development." (Internal quotation marks omitted.) Id., 695. This presents a high bar for the commission, as "the test we must apply under § 8-30g is not whether the [commission's] decision was reasonable, but whether the decision was necessary." *Eureka V, LLC* v. *Planning & Zoning Commission*, 139 Conn. App. 256, 275, 57 A.3d 372 (2012).

To establish that its denial is necessary, the commission's decision must be predicated on evidence in the record of both the existence of a potential harm and the probability that such harm, in fact, would occur. See *Kaufman* v. *Zoning Commission*, supra, 232 Conn. 154–62. Essentially, the commission's decision must be supported by sufficient evidence, which is more than a mere possibility but not necessarily a preponderance of the evidence, that the public interest at stake will be harmed if the commission does not deny the application. *Christian Activities Council, Congregational* v. *Town Council*, 249 Conn. 566, 597, 735 A.2d 231 (1999).

A commission is not entitled to reject an application on the basis of the mere possibility of harm or generalized concerns. *Carr* v. *Planning & Zoning Commission*, 273 Conn. 573, 608–609, 872 A.2d 385 (2005) (report suggesting possibility that no method of treating radionuclides would be feasible was not valid reason to deny plaintiff's application); *Kaufman* v. *Zoning Commission*, supra, 156 (denial not necessary on basis of mere possibility of harm to watershed without evidence quantifying probability of such harm); *Brenmor Properties, LLC* v. *Planning & Zoning Commission*, supra, 162 Conn. App. 703–704 (evidence of noncompliance with ordinance did not obviate need for commission to identify evidence of quantifiable probability of specific harm, without which evidence commission did not demonstrate that denial was necessary); *Eureka V, LLC* v. *Planning & Zoning Commission*, supra, 139 Conn. App. 276–77 (without evidence of likelihood that harm would occur, commission could not as matter of law determine that decision was necessary to protect interest); *Mackowski* v. *Zoning Commission*, 59 Conn. App. 608, 617, 757 A.2d 1162 (denial not necessary to prevent adverse traffic and sewer impact when record lacked specific supporting factual findings), cert. granted, 254 Conn. 949, 762 A.2d 902 (2000) (appeal withdrawn September 21, 2001). Accordingly, in determining whether the commission has met its burden under § 8-30g, our courts review the record for specific factual findings and evidence quantifying the probability that harm will result. *Kaufman* v. *Zoning Commission*, supra, 156.

A

We begin our analysis by noting that the record is replete with evidence of the need for affordable housing in Fairfield. This need has persisted for decades. In 1989, the original Affordable Housing Plan for Fairfield acknowledged that "Fairfield's single population of unwed, divorced or widowed residents have extreme difficulties in securing affordable housing within the limits of their single income capacities." Yet, within the last ten years, Fairfield has seen little to no improvement in addressing its dire need for affordable housing. In 2011, the town's Affordable Housing Committee reported that since 1989, the town listed forty-seven affordable ownership units; 266 elderly/disabled units; nineteen permanent supportive units; and twenty-one multifamily rental units, only one of which was a one bedroom apartment. Altogether, in 2011, only 2.69 percent of the town's housing consisted of affordable housing units, down from 2.71 percent since 2000.

The record further reflects that, as of 2011, there are no affordable housing units in the Southport section of the town. As mentioned in Garden Homes' initial project description, "[a] multitude of town-produced documents over many years attests to the need for affordable housing in Fairfield," including indications that the

community has been reluctant to accept "the [t]own's role in providing or supporting the development of rental or for sale housing at below market rate" and the need to provide affordable housing for young and single people. Other town documents indicated that the town "does not have a large supply of rental housing, affordable or otherwise," and that the town particularly lacked affordable housing for persons with disabilities.

Based in part on such representations, Fairfield received a $383,457 block grant from the United States Department of Housing and Urban Development in 2012. Of the Connecticut municipalities receiving Community Development Block Grants, Fairfield has the lowest percentage of affordable housing. In 2013, the town sought public input in updating its Affordable Housing Plan. In its request, the town outlined its affordable housing situation and needs, stating: "The lack of affordable housing is a significant issue that many communities face. This is especially true in Fairfield, where the average cost of a single family home in 2012 topped $521,000. Rising housing costs and the lack of inventory among more modestly sized starter homes have meant that many young professionals and working class families are increasingly squeezed out of the local housing market. Additionally, many elderly homeowners that wish to [downsize] cannot find housing to suit their needs. Eighty-four percent of the [t]own's housing stock is comprised of single-family homes. . . . All communities thrive on diverse population; therefore the housing stock should reflect those different needs."

Garden Homes initially proposed "setting aside 30 [percent] of the [proposed] units as affordable for a period of [forty] years." It would offer "[f]ifteen . . . [units] to families whose income is less than or equal to 60 percent of the area or statewide median income, whichever is less . . . [and] [f]ourteen . . . [units] to families whose income is greater than 60 percent but less than or equal to 80 percent of the area or statewide median income, whichever is less." The proposal, therefore, would help ameliorate Fairfield's dire need for affordable housing. The commission, in its letter denying Garden Homes' revised application, acknowledged that "we all share the view that we need more affordable housing . . . ."

The court acknowledged that the proposal qualified as an affordable housing plan under § 8-30g. Accordingly, in reviewing both Garden Homes' initial and revised application and site plans, the court considered the evidence as to the state of affordable housing in Fairfield and weighed such need against the commission's concerns. The court ultimately determined that the commission's concerns did not outweigh Fairfield's need for affordable housing. We will review both of the court's decisions, in turn.

## B

We now consider whether the commission's concerns as to Garden Homes' initial application and site plans outweighed the need for affordable housing. The court concluded that concern as to the inability for large vehicles to turn around upon exiting the site was the only concern that potentially could have outweighed Fairfield's need for affordable housing. The court ruled that the remaining concerns did not outweigh Fairfield's need for affordable housing. We conclude that the court's decision was proper.

In reviewing the propriety of the court's determinations, we are cognizant that the commission bore the burden of proving that its denial was necessary to protect its interests. Speculative concerns do not suffice. See *Brenmor Properties, LLC* v. *Planning & Zoning Commission*, supra, 162 Conn. App. 708 ("speculation . . . ha[s] no place in appellate review" [internal quotation marks omitted]). Moreover, the commission's denial must be based on a quantifiable probability that such harm will occur. See, e.g., *Eureka V, LLC* v. *Planning & Zoning Commission*, supra, 139 Conn. App. 276–77 (without evidence of likelihood that harm would occur, commission could not as matter of law determine that decision was necessary to protect interest). With these principles in mind, we conclude that the court properly determined that the commission's concerns regarding the twenty foot access way width, lack of sidewalks, proposed number of parking spaces, and lack of a secondary access way do not outweigh Fairfield's need for affordable housing.

As to the access way width, the record reflects that twenty feet is adequate to comply with national fire safety standards. Although town staff have recommended adding four feet to the access way width, in light of evidence that a width of twenty feet is adequate to accommodate fire truck passage, any inability to expand the access way beyond this width does not necessitate the commission's denial. Moreover, even if twenty feet was not the minimally acceptable access way width, the commission still would be required to prove that its denial was necessary to protect substantial public interests. See *Brenmor Properties, LLC* v. *Planning & Zoning Commission*, supra, 162 Conn. App. 703–704 (mere noncompliance with municipal ordinance did not relieve commission of need to satisfy its burden under § 8-30g). Accordingly, we agree with the court's conclusion that, on balance, any concern as to the adequacy of the twenty foot wide access way, or the desirability of increasing the width by four feet, did not outweigh the need for affordable housing.

We additionally agree with the court's determination that concern as to the lack of sidewalks did not outweigh Fairfield's need for affordable housing. The com-

mission cited concerns that during an emergency, pedestrians might attempt to flee in the twenty foot wide right of way, which would thereby endanger the pedestrians and impede emergency vehicles entering the property. The court was not persuaded. It determined that the entrance way would be located in close proximity to the Interstate 95 on-ramp and that there would be no sidewalks on the east side of Bronson Road, as there would be no particular place for pedestrians to walk. Accordingly, the court opined that pedestrians would not necessarily crowd the entrance way during an emergency. Moreover, the court concluded that such concern was merely theoretical. We agree that the commission's concerns were merely theoretical, and, therefore, the court properly concluded that those concerns did not outweigh Fairfield's need for affordable housing. See id., 694–96.

We also agree with the court's determination that concern as to the ratio of parking spaces to dwelling units did not outweigh Fairfield's need for affordable housing. The court considered differing testimony as to the ratio of parking space per unit. Spear recommended 1.5 parking spaces per unit because it would reduce the need to search for parking spaces during peak hours. Kermit Hua, Garden Homes' traffic engineer, advised that 1.2 parking spaces per unit would be consistent with national standards set forth in the Institute of Transportation Engineers, Parking Generation (4th Ed. 2010). The court determined that the concerns as to the ratio of parking spaces per unit were merely concerns as to the convenience of parking. The commission bears the burden of proving that its denial was necessary, in that it must be predicated upon evidence in the record as to a quantifiable probability that harm would occur. See *Kaufman* v. *Zoning Commission*, supra, 232 Conn. 154–62. We, therefore, conclude that the court properly determined that concern as to the ratio of parking spaces per unit did not outweigh Fairfield's need for affordable housing.

We also agree with the court's determination that concern as to the lack of a second access way did not outweigh Fairfield's need for affordable housing. The court determined that a secondary access way was not necessary to adhere to national fire safety standards. It, therefore, concluded that the lack of a secondary access way did not necessarily warrant the commission's denial. On our review of the record, we conclude that the court's determination was sound, and concerns as to the lack of a secondary access way did not necessitate the commission's denial.

On this point, however, the court acknowledged the need to afford fire trucks the ability to turn around on-site so that they could leave the site without backing up the full length of the access way. It noted, however, in light of Garden Homes' proposed redesign to the

turnaround area, that it might be possible to accommodate this concern via alternative plans. The court, accordingly, remanded the case for consideration of the revised turnaround area. Neither party challenges the propriety of the court's decision to remand the case for this purpose. We will not review the propriety of the court's remand order.

We conclude that the court's determinations as to Garden Homes' initial application were proper.

C

We now consider whether the commission's concerns as to Garden Homes' revised application and site plans outweighed the need for affordable housing. After reviewing the commission's decision to deny Garden Homes' revised application, the court declined to consider certain evidence that it determined exceeded the scope of its remand order. It additionally concluded that the commission, nonetheless, raised no new concerns on remand that outweighed Fairfield's need for affordable housing. On appeal to this court, the commission claims that the court improperly declined to review certain evidence and further claims that it nonetheless satisfied its burden under § 8-30g. We disagree with the commission on both matters.

On remand, the commission "should examine the mandate and the opinion of the reviewing court and proceed in conformity with the views expressed therein." (Emphasis omitted; internal quotation marks omitted.) *West Haven Sound Development Corp.* v. *West Haven*, supra, 207 Conn. 312. A court or administrative body may consider matters that are "relevant to the issues upon which further proceedings are ordered," provided such matters are not "extraneous to the issues and purposes of the remand . . . ."[12] *Cioffoletti* v. *Planning & Zoning Commission*, 220 Conn. 362, 369, 599 A.2d 9 (1991) (concluding court did not exceed scope of remand by resolving issue on grounds not mentioned in previous decision); cf. *Bauer* v. *Waste Management of Connecticut, Inc.*, 239 Conn. 515, 524–25, 686 A.2d 481 (1996) (revised pleadings permitted to consider new facts that occurred since original trial that relate to matter relevant to remand). Nonetheless, the burden rests with the commission in an affordable housing appeal to demonstrate that its decision is supported by sufficient evidence in the record. General Statutes § 8-30g. To this end, "[i]t is well established that in administrative . . . cases, when the party charged with the burden of proof fails to satisfy that burden, it is not entitled to a second bite at the apple on remand." (Internal quotation marks omitted.) *Shelton* v. *Statewide Grievance Committee*, 277 Conn. 99, 111, 890 A.2d 104 (2006).

In the present case, the court had issued a limited remand order directing the commission to consider

potential redesigns to the turnaround area. The purpose of the court's order, essentially, was to ensure that fire trucks could exit the site without needing to back up the entire length of the access way. If Garden Homes could propose site plan revisions that allowed for this, then a secondary access way would not be necessary.

The commission, however, mistakenly interpreted the court's order in light of the court's determination that concern as to the inability of fire trucks to turn around on-site posed a considerable concern as to public health and safety. The commission, therefore, evaluated Garden Homes' revised site plans more broadly for any new concerns pertaining to the department's ability to access the building and enter and exit the site. In doing so, the commission, in effect, rehashed matters on which the court previously had ruled.

Significantly, a key submission to the commission was the Bisson report, in which the assistant fire chief essentially reiterated the department's prior concerns as to certain features in Garden Homes' proposed plans, including the twenty foot wide access way and the lack of a secondary entrance, and took issue with matters that did not pertain to the turnaround area. By incorporating the Bisson report and other recommendations from the department into its collective statement of denial, the commission evaluated matters well beyond the ability of fire trucks to turn around on-site.

For that reason, the court concluded that the commission went well outside the bounds of the limited remand. As it stated in its memorandum of decision: "The court is surprised by the [commission's] response to the limited remand. The court ordered the remand for consideration of the proposed redesign of the building and parking area to allow a ladder truck to leave the site without having to back up the full length of the access road. The [c]ommission had not considered this proposal due to its late introduction into the hearing process and the absence of the engineered plan. However, the [commission], instead of focusing on the issue that was remanded, used the remand to bolster its previous objections, which had been ruled on and rejected, adding considerable time and expense to the affordable housing application and project."

Specifically, the court determined that the following considerations, on which the commission had based its denial, pertained to matters beyond the adequacy of the revised turnaround area: lack of secondary access way; lack of area of refuge during an emergency; possibility that residents will flee the site during an emergency; prospective ninety-five cars leaving the site during an emergency against a half dozen emergency vehicles arriving; McCarthy's predicted twenty-four annual emergency responses to the site; prediction that the department would be on-site for hours; ladder truck's ability to access the roof; turnaround area's suit-

ability to accommodate incoming emergency vehicles; and McCarthy's opinion as to alternative site plans to address the department's concerns. The court declined to review this evidence.

"In carrying out a mandate of [the higher court], the [lower] court is limited to the specific direction of the mandate as interpreted in light of the opinion. . . . The [lower] court cannot adjudicate rights and duties not within the scope of the remand." (Citations omitted; internal quotation marks omitted.) *State* v. *Tabone*, supra, 301 Conn. 714–15; *Nowell* v. *Nowell*, 163 Conn. 116, 121, 302 A.2d 260 (1972). "When a case is remanded for a rehearing, the trial court's jurisdiction and duties are limited to the scope of the order. . . . The trial court should not deviate from the directive of the remand." (Citations omitted.) *Leabo* v. *Leninski*, 9 Conn. App. 299, 301, 518 A.2d 667 (1986), cert. denied, 202 Conn. 806, 520 A.2d 1286 (1987); see also *State Bar Assn.* v. *Connecticut Bank & Trust Co.*, 146 Conn. 556, 561, 153 A.2d 453 (1959) (lower court on remand is limited to specific direction of higher court mandate); *Manchester Modes, Inc.* v. *Ellis*, 2 Conn. App. 261, 262, 477 A.2d 164 (1984) (same). The same rules apply to a trial court's remand order to an administrative committee or board. See *Shelton* v. *Statewide Grievance Committee*, supra, 277 Conn. 111.

Accordingly, the court concluded that the commission "had no jurisdiction over those issues not specifically remanded to it." We agree with the court's determination that, on remand, the commission had jurisdiction only over those issues specifically remanded to it. The court correctly concluded that the commission was not entitled to treat the court's limited remand order as a second bite at the apple. See *Shelton* v. *Statewide Grievance Committee*, supra, 277 Conn. 111. Accordingly, the court properly declined to review evidence that exceeded the scope of its remand.

Turning now to the matter that properly was before the commission on remand, we agree with the court's conclusion as to the revised turnaround area. The commission remained concerned that the revised turnaround area would assist the department only upon exiting the development and would not improve access to the building in the event of an emergency. Additionally, the commission noted that in the revised turnaround area, an emergency vehicle would need to make, at a minimum, a W shaped turning movement, and not a hammerhead, Y, or K turn, as demonstrated in the Occupational Safety and Health Administration's 2006 Fire Service Features of Buildings and Fire Protection Systems manual. It, therefore, was concerned that an emergency vehicle might have difficulty making the required turning movements in that area.

The court, upon its review of Garden Homes' revised site plans, characterized the commission's concerns as

to emergency vehicle maneuverability within the turnaround area as mere concern that "some maneuvering will be required" before such vehicle can turn around. It, therefore, was not convinced by the commission's concern that an emergency vehicle might not be able to turn around successfully, or otherwise might require a number of different turning movements, in the revised turnaround area. The court was persuaded that the revised turnaround area satisfactorily addressed its previous concerns, such that the revision constituted "a health and safety improvement" to the plan. Accordingly, the court concluded that the commission's concerns as to maneuverability within the turnaround area did not outweigh the need for affordable housing.

We see no reason to disturb the court's determination as to the adequacy of the revised turnaround area. Garden Homes provided the commission with evidence of turning movement counts, which Garden Homes' engineer calculated using radius measurement provided by the manufacturer of the department's largest fire truck. According to those plans, the department's largest fire truck could turn around by making a four count W shaped turning movement in the proposed turnaround area. The possibility that this maneuver could be difficult or that a reverse in direction could require additional turning movements is just that, a possibility. The record does not contain evidence as to the probability that such a scenario will result in harm to health and safety. See *Eureka V, LLC* v. *Planning & Zoning Commission*, supra, 139 Conn. App. 276–77 (commission required to provide evidence as to likelihood that harm would occur).

We also agree with the trial court's conclusion that "[t]o the extent the [c]ommission has raised any new health and safety concerns . . . those concerns do not outweigh [Fairfield's] need for affordable housing." Fairfield remains in dire need of affordable housing, yet largely has ignored this need. Although the commission had before it reasonable public health and safety concerns, the commission nonetheless bore the burden of demonstrating that its denial was necessary so as to outweigh the need for affordable housing. *JAG Capital Drive, LLC* v. *Zoning Commission*, supra, 168 Conn. App. 667–68. On the basis of our review of the record, we conclude that the commission has failed to satisfy its burden and that any concerns the commission raised do not outweigh Fairfield's long time and admitted need for affordable housing. We, therefore, conclude that the court properly sustained the plaintiffs' appeal.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The original plaintiffs were Garden Homes, which filed an application for the approval of an affordable housing development that would be situated on two abutting parcels of land located at 92 and 140 Bronson Road in Fairfield, Sandra Conner, who owned the parcel of land located at 140 Bronson Road, and Richard Irwin, acting by and through his conservator,

Robert Russo, who owned the parcel of land located at 92 Bronson Road. Subsequently, on June 2, 2016, the court granted the original plaintiffs' motion to substitute Garden Homes Residential, L.P., as a plaintiff for Conner and Irwin on the ground that Conner and Irwin conveyed title of their properties to Garden Homes Residential, L.P., in December, 2015. For convenience, unless otherwise indicated, all references to the plaintiffs in this opinion are to Garden Homes and Garden Homes Residential, L.P.

[2] Fifteen units would accommodate families with income "less than or equal to 60 percent of the area or statewide median income, whichever is less," and fourteen units would accommodate families "whose income is greater than 60 percent but less than or equal to 80 percent of the area or statewide median income, whichever is less."

[3] Similarly, in a recent decision also involving the commission, "a clerk for the commission . . . wrote the plaintiff's counsel a letter providing the . . . purported reasons for the commission's denial . . . . Although our case law directs that we not rely on a letter that was not adopted by the commission to evince the commission's collective decision; see *Smith-Groh, Inc.* v. *Planning & Zoning Commission*, [78 Conn. App. 216, 224–26, 826 A.2d 249 (2003)] (concluding that letter to applicant's attorney [received] from town planner, purporting to state reasons for commission's denial of application for site plan approval and special permit, was not collective statement of commission's decision, given that commission had not adopted letter, and stating that '[a]lthough the reasons outlined in the letter were discussed by the commission during either the public hearing or the special meeting, the planner could not speak for the commission'); because the parties . . . agree[d] that the letter properly [set] forth the reasons for the commission's decision and [did] not claim that the . . . letter should not be considered, we . . . for purposes of [that] case, consider[ed] the reasons set forth in the letter." (Footnote omitted.) *American Institute for Neuro-Integrative Development, Inc.* v. *Town Plan & Zoning Commission*, 189 Conn. App. 332, 337–38, 207 A.3d 1053 (2019).

Although we will take the same approach in the present case and consider the reasons set forth in the letter from the clerk, we strongly urge the commission to be mindful that it ordinarily should not rely on a letter from a representative of the commission to represent the commission's collective statement in the absence of the commission adopting such statement.

[4] The record indicates that Connecticut adopted the 2003 edition of NFPA 1 as the 2010 Connecticut State Fire Prevention Code. NFPA 1 fire safety standards provides: "Fire department access roads shall have an unobstructed width of not less than 20 ft (6.1 m) and an unobstructed vertical clearance of not less than 13 ft 6 in. (4.1 m)." NFPA 1, Uniform Fire Code (2003 Ed.) § 18.2.2.5.1.1, p. 1-113.

[5] The NFPA standards provide that one access route is adequate for developments containing one to 100 "households." NFPA 1141, Standard for Fire Protection Infrastructure for Land Development in Wildland, Rural, and Suburban Areas (2012 Ed.) § 5.1.4.1, Table 5.1.4.1 (a), p. 1141-7.

[6] The court also ordered that the commission make it a condition of approval that Garden Homes receive final approval from Fairfield's Water Pollution Control Authority (WPCA). As part of its revised site plans, Garden Homes proposed installing a two foot reinforced grass shoulder along a portion of the access way that would run against the Mill River. Garden Homes represented to the commission that the WPCA had unanimously approved this feature.

After reviewing the commission's denial of Garden Homes' revised application, the court noted: "At the same time that [Garden Homes] proposed the [turnaround] for the fire truck, it also proposed placing concrete pavers on the sides of the [entryway], allowing some additional maneuvering area for the ladder trucks entering and exiting the site. The [commission] did not act on that proposal . . . . However, as the court found in [its] first [decision] that the twenty foot width was adequate for ingress and egress, there is no legal requirement for the pavers and, therefore, there is no need to mandate their installation. Further, it now appears that any such installation of pavers might require wetlands review. Given that the pavers and the increase of the width of the road are not necessary for the approved access way, there is no reason to revisit the offer of installing them."

Because the commission did not approve Garden Homes' revised application and site plans, it did not assign conditions for approval. Thus, this matter is not dispositive in the present appeal, and we will not consider it further.

[7] As the plaintiffs note in their brief, new matters addressed in the Bisson

report included (1) roof and attic safety; (2) space to deploy ladders on the rear side of the building; (3) proximity of ladders to nearby high voltage power lines; (4) concerns as to construction style; (5) lack of fire lanes; (6) no "exterior defensive firefighting positions"; (7) pedestrian traffic exiting during an emergency; and (8) the possibility of a gas leak, transportation incident, or chemical release. (Internal quotation marks omitted.)

[8] We reiterate that although we will, for the purposes of this case, consider the reasons set forth in the clerk's letter, parties should not rely on a letter from a representative of the commission to represent the commission's collective statement in the absence of the commission adopting such statement. See footnote 3 of this opinion.

[9] The letter provided: "At the May [24, 2016] hearing the [c]ommission heard from . . . McCarthy. [McCarthy] urged the [c]ommission to deny the revised plan and offered his testimony:

"The size, type of construction and configuration of the project requires the [department] to be able to access the building.

"A lack of secondary access and the revised plan significantly impair the [department's] ability to access the property and its operations.

"The [department] is responsible for all the occupants of the building during an emergency and there is no place for the residents to go or assemble during an emergency response.

"[I]n an emergency, residents will attempt to flee in their cars because they want to protect their investment and avoid being trapped [on-site] for extended time.

"Up to [ninety-five] cars will be attempting to leave at the same time that a half dozen emergency apparatus would be arriving.

"The [U]niform [F]ire [C]ode and the NFPA standards require a secondary access when in the opinion of the Authority Having Jurisdiction (AHJ) a single access road could be impaired or other factors necessitate it.

"The [department] has responded fourteen times since June 2014 to the Garden Homes development on Fairchild Avenue including a structure fire. That building has [fifty-four] units. For this building, the [department] expects to respond about twenty-four times annually or twice per month. All five stations would respond to this site due to its size. Due to the limited access and space for maneuvering, all of the required equipment could not be deployed properly. This opinion is based on [McCarthy's] experience and is not imagined or theoretical. He indicated there is 'no doubt' they would be there repeatedly.

"When the [d]epartment responds, it will be there for hours.

"The ladder truck cannot access the roof.

"The turnaround [area] does not help [department] operations nor improve access to the building and is only useful when it is time to leave.

"There was further testimony from others that it is questionable that the fire trucks could even make the required multiple maneuvers in the space provided.

"[McCarthy] was asked if he thought the revised plan was safe and his response was 'no.'

"In addition, the [c]ommission asked [McCarthy] if there was any alternative available to address the concerns of the department and his response was 'no.' "

[10] The commission concluded: "1. There is sufficient evidence in the record to support a finding that the proposed development would pose substantial risks to public interests in health and safety.

"2. Those public interests clearly outweigh the need for affordable housing.

"3. There are no reasonable conditions of approval that can be made to protect those public interests."

[11] Although § 8-30g (g) was the subject of technical amendments in 2017; see Public Acts 2017, No. 17-170, § 1; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[12] The commission indicates that our precedent does not fully address the scope of remand in the context of a land use administrative appeal. We see no reason to consider the scope of the commission's review on the Superior Court's remand of the commission's administrative decision differently than we would the scope of the Superior Court's review on remand from the Appellate Court.