******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# VESSEL RE HOLDINGS, LLC *v.* TOWN PLAN AND ZONING COMMISSION OF THE TOWN OF GLASTONBURY
## (AC 48315)

Suarez, Westbrook and Wilson, Js.

*Syllabus*

The defendant town plan and zoning commission appealed, on the granting of certification, from the trial court's judgment sustaining in part the plaintiff's appeal from the defendant's decision denying the plaintiff's application for an affordable housing development. The court determined that the industrial zone exception in the statute (§ 8-30g (g) (2) (A)) governing affordable housing land use appeals did not apply and remanded the case to the commission for further proceedings under § 8-30g (g) (1). The defendant claimed, inter alia, that the court erred in concluding that a zone where multiple uses are authorized was nonetheless not a zone authorizing industrial uses as that phrase was employed in § 8-30g (g) (2) (A). *Held*:

This court dismissed the appeal for lack of subject matter jurisdiction, as the trial court's decision was not an appealable final judgment in light of the trial court's remand order for further proceedings on the plaintiff's application pursuant to § 8-30g (g) (1).

Argued September 18, 2025—officially released February 3, 2026

*Procedural History*

Appeal from the decision of the defendant denying the plaintiff's application for an affordable housing development, brought to the Superior Court in the judicial district of Hartford, where the court, *O'Hanlan, J.*, granted the motion to intervene as defendants filed by 65 Kreiger Lane, LLC, et al.; thereafter, the case was tried to the court, *O'Hanlan, J.*; judgment sustaining in part the plaintiff's appeal and remanding the case to the defendant for further proceedings, from which the defendant, on the granting of certification, appealed to this court. *Appeal dismissed.*

*Kenneth R. Slater, Jr.*, for the appellant (defendant).

*Timothy S. Hollister*, with whom, on the brief, was *Andrea Gomes*, for the appellee (plaintiff).

*Opinion*

WILSON, J. The plaintiff, Vessel RE Holdings, LLC, appealed to the Superior Court pursuant to General Statutes §8-30g[1] from the denial of its application for an affordable housing development by the defendant Town Plan and Zoning Commission of the Town of Glastonbury (commission).[2] The town of Glastonbury (town) is subject to the appeals procedure codified in §8-30g because it does not have at least 10 percent affordable housing stock. See General Statutes §8-30g (k). Following the plaintiff's appeal to the Superior Court, the commission bore the burden of proving, on the basis of the evidence in the record compiled before it, that its denial of the plaintiff's application was proper because

[1] General Statutes §8-30g provides in relevant part: "(f) . . . [A]ny person whose affordable housing application is denied, or is approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units in a set-aside development, may appeal such decision pursuant to the procedures of this section. . . .

"(g) Upon an appeal taken under subsection (f) of this section, the burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission, that the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record. The commission shall also have the burden to prove, based upon the evidence in the record compiled before such commission, that (1) (A) the decision is necessary to protect substantial public interests in health, safety or other matters which the commission may legally consider; (B) such public interests clearly outweigh the need for affordable housing; and (C) such public interests cannot be protected by reasonable changes to the affordable housing development, or (2) (A) the application which was the subject of the decision from which such appeal was taken would locate affordable housing in an area which is zoned for industrial use and which does not permit residential uses; and (B) the development is not assisted housing. If the commission does not satisfy its burden of proof under this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it. . . ."

[2] The record reflects that the trial court granted the motion to intervene as party defendants filed by 65 Kreiger Lane, LLC, and 36 Kreiger Lane, LLC. Both of these entities argued that they were aggrieved by virtue of the fact that their land abuts or lies within 100 feet of the property at issue in the plaintiff's application.

(1) the conditions set forth in §8-30g (g)(1) were satisfied *or* (2) the industrial zone exception codified in §8-30g (g)(2) applied. The commission denied the application on the sole ground that the industrial zone exception under §8-30g (g)(2)(A) applied. Although evidence was presented on the merits of whether §8-30g (g)(1) applied to the plaintiff's application, the commission did not address this issue because it had determined that the industrial zone exception applied.

The issue on appeal before the Superior Court was whether the commission properly determined that the area where the plaintiff sought to construct the affordable housing development fell within the industrial zone exception under §8-30g (g)(2)(A). The plaintiff also claimed on appeal that in light of the refusal by the commission to address the merits of whether the provisions of §8-30g (g)(1) applied to the plaintiff's application, its application should have been deemed approved under General Statutes §8-3 (g)(1).[3] The plaintiff further argued that when the commission failed to review the site plan under §8-30g (g)(1) after it closed the public hearing on March 21, 2023, the site plan was presumed to be approved under §8-3 (g)(1). The plaintiff argued that the commission waived its right to review the site plan for failing to review it under §8-30g (g)(1) during its deliberations on March 21, 2023. The trial court determined that the industrial zone exception did not apply and sustained the plaintiff's appeal in part. Having determined that the industrial zone exception did not apply, the court remanded the matter for further proceedings on the plaintiff's application under §8-30g (g)(1).

Following a grant of certification to appeal by this court, the commission appeals from the trial court's decision, claiming that the court erred (1) in finding that the Planned Commerce Zone (PCZ), where no property

[3] General Statutes §8-3 (g)(1) provides in relevant part: "Approval of a site plan shall be presumed unless a decision to deny or modify it is rendered within the period specified in section 8-7d. . . ."

can be developed with a residential use of any kind, is a zone that permits residential uses simply because §4.15.1 of the town's Building-Zone Regulations (regulations) provides that preexisting residences are permitted in the zone, and (2) in concluding that a zone where multiple uses are authorized was nonetheless not a zone authorizing industrial uses as that phrase is employed in §8-30g (g) (2).

The plaintiff argues, inter alia, that this court lacks subject matter jurisdiction over the commission's appeal because the trial court's decision is not an appealable final judgment in light of the court's remand order for further proceedings on its application under §8-30g (g) (1). The plaintiff argues that, because the court remanded the case for further proceedings on the merits of the plaintiff's application under §8-30g (g) (1), which was before the commission at the time it denied the application based on the industrial zone exception under §8-30g (g) (2) (A), the trial court's decision is not an appealable final judgment. The plaintiff argues that the purpose of the final judgment rule is to avoid "'piecemeal'" appeals and that, with certification having been granted in this appeal, piecemeal proceedings are underway because the parties will litigate the industrial zone exception before this court, and, if the trial court is affirmed, the merits of the application will then be addressed by the commission, and, if denied, certification and a possible appeal will follow.

The commission argues that, in the context of the statutory scheme at issue in this case, which employs two mutually exclusive grounds for reviewing set-aside affordable housing applications, the trial court's decision regarding whether the commission satisfied its burden under the industrial zone exception, §8-30g (g) (2) (A), is an appealable final judgment notwithstanding that the commission will have to proceed to evaluate the merits of the application under §8-30g (g) (1) if the commission is unsuccessful on appeal. The commission argues that the trial court's remand order for the commission to

consider the merits of the plaintiff's application under the alternative ground pursuant to §8-30g (g) (1) cannot have any effect on the trial court's decision finding that the industrial zone exception under §8-30g (g) (2) (A) does not apply, which is the subject of this appeal. The commission argues that the issue decided by the trial court has been fully and finally decided. We are not persuaded and conclude that the commission's appeal was not taken from a final judgment and, as a result, dismiss the appeal.

The following facts and procedural history taken from the trial court's decision are relevant to our resolution of the issues on appeal. "The plaintiff applied to the commission for a site plan to construct an affordable housing development consisting of forty-eight one bedroom rental apartments in a single building at 51 Kreiger Lane in Glastonbury. . . . The subject property is a 0.93 acre lot on the northerly side of Kreiger Lane, approximately 550 feet east of the intersection of Kreiger Lane and Oak Street. . . . The lot is located in the town's [PCZ] and is described in §4.15 of the [regulations], effective April 14, 2004. . . . The property is surrounded by industrial, commercial, and residential uses, including a multifamily development and a daycare. . . .

"The plaintiff propose[d] a set-aside development, as defined by §8-30g (a) (6), with fifteen units, or 30 percent of the total units proposed in the application, rent restricted for forty years. . . . Approximately half of these set-aside units would be available to people earning 80 percent or less of the area or state median income, whichever is less, and the other half would be available to people earning 60 percent or less of the area or state median income, whichever is less. . . .

"Between the filing of the plaintiff's application on November 14, 2022, and the beginning of the public hearing on February 21, 2023, the application was reviewed by town agencies and offices that typically comment on such applications and the commission's staff received updates concerning these reviews. The staff report to

the commission prior to the February 21, 2023 public hearing references reviews received as of that date and cite[d] no criticism or deficiency in the site plan or the affordability plan. . . .

"While the plaintiff's application was being reviewed by town agencies and staff, but before the public hearing began, the town manager requested an opinion from the town's attorney as to whether the PCZ 'is eligible for affordable housing applications under . . . [the statute].' . . . Citing to three Superior Court decisions . . . the opinion letter . . . concluded that the statute's appeals procedures would not apply to an application in the PCZ because the zone was industrial and did not allow residential uses and, therefore, fit the industrial zone exception under § 8-30g (g) (2). . . .

"In response, the plaintiff submitted an opinion letter . . . [c]iting to the same three Superior Court decisions as the town's counsel, in addition to other Connecticut court decisions regarding statutory interpretation and the affordable housing policies and purpose behind the statute, [in which] counsel opined that the industrial [zone exception] in the statute does not apply to the PCZ because it is not an industrial zone, as evidenced by its title, by the fact that an industrial zone exists elsewhere in the town, and because the PCZ permits residential uses as of right." (Citations omitted; footnotes omitted.)

At the February 21, 2023 public hearing, there was testimony on the application from the plaintiff's team of consultants, who gave a detailed presentation of the application. The commission followed with questions "about, among other things, the plaintiff's experience in housing and affordable housing, the traffic study, the engineering and stormwater management on the site, lighting, sustainability features in the architecture, the building design and materials, the 'snow plow' plan, the

'target' renters for small, one bedroom units, and how these renters fit into its affordability plan. . . .

"Additionally, neighboring business owners testified against the plaintiff's application expressing concerns about safety. . . . The commission further discussed with its counsel . . . and the plaintiff's counsel whether the industrial zone exception applied and talked about specific uses and changes in the uses of the properties in the PCZ following its creation. . . .

"Ultimately, members on the commission requested that the town attorney provide more information about residential uses in the PCZ regulation and the industrial zone exception in the statute before scheduling the next public hearing session for March 21, 2023. . . .

"[T]own counsel submitted a legal memorandum, dated March 14, 2023, with copies of the same three Superior Court decisions cited in their earlier letter, and two other Superior Court decisions, arguing that the industrial zone exception applied. . . . The memorandum also discussed the legislative history of the industrial zone exception in the statute. . . . It did not contain, however, any information about the legislative history of the PCZ or why the . . . regulations treated residential uses as it did.

"At the continuation of the public hearing on March 21, 2023, the plaintiff's counsel updated the commission on minor changes to the plans in response to comments from reviewing town offices and provided answers to the commission's questions from the February 21, 2023 public hearing session. . . . No commission member or staff mentioned that the application did not meet the site plan standards in the regulations or was defective in any other way. This final presentation by the plaintiff represented a little more than one quarter of the public hearing session. The remaining three quarters of the public hearing consisted of town counsel's explanation of its March 14, 2023 memorandum, neighbor comments, including those of counsel representing the defendant-intervenors in [the] appeal, 36 Kreiger Lane, LLC, and

65 Kreiger Lane, LLC, and discussion of the opposing opinions regarding the industrial zone exception, and the nature of the uses in the PCZ." (Citations omitted; footnote omitted.)

The commission closed the public hearing without any members mentioning or inquiring about the site plan, its compliance with the regulations, or the input from the various town agencies that had reviewed and provided input resulting in changes to the site plan by the plaintiff. Rather, the commission members stated their agreement with town counsel's opinion that the industrial zone exception applied and consequently denied the plaintiff's application on that sole ground. The commission gave five reasons for denying the plaintiff's application:

"1. The proposed project would locate affordable housing in an area which is zoned for industrial use; the [PCZ].

"2. The [PCZ] permits a typical range of industrial uses, including eight . . . different types of manufacturing uses; bus garaging and equipment maintenance; construction services; excavation and filling of earth products; finance, insurance and real estate services; motor freight transportation terminal and garage; motor vehicle car wash and general repair and service; professional offices and services; various indoor recreation and fitness uses; utilities; vocation schools; warehousing; and retail trade.

"3. The [PCZ] does not permit new residential uses.

"4. The [PCZ] fits the statutory exemption from the Affordable Housing Land Use Appeals Act [§ 8-30g (g)] because it allows what are overwhelmingly industrial-type uses while excluding new residential uses.

"5. Because the [PCZ] is not subject to the Affordable Housing Land Use Appeals Act, the project must be evaluated based on its conformance or lack thereof, with

the [regulations], which prohibit the proposed residential use in this location.''

As previously noted, the plaintiff timely appealed the commission's denial of its application to the Superior Court. The commission argued before the court that its denial was proper because the PCZ falls within the industrial zone exception codified in §8-30g (g) (2) (A) as an area that is zoned for industrial zone use, and which does not permit residential uses. The commission further argued that, if the industrial zone exception does not apply, the court should remand the case back to the commission for it to evaluate the site plan under §8-30g (g) (1).

The plaintiff argued that the industrial zone exception does not apply because the PCZ, by name and by purpose, is not an area zoned for industrial use and, in fact, does permit residential uses as of right. Additionally, the plaintiff noted that the commission allowed both full review of the site plan by staff and town agencies and full presentation of the site plan by the plaintiff at two public hearing sessions, but failed to act on the site plan under §8-30g (g) (1) within the time frame set forth in §8-3 (g) (1). Thus, the plaintiff argued, the court should conclude that the commission had waived its opportunity to give reasons under §8-30g (g) (1) why the application should be denied and should therefore deem the application approved as a matter of law.

After hearing oral arguments on the appeal and after having exercised its plenary review of the record, the court found that ''the PCZ was created from a former industrial zone, in an area near and containing existing residential and commercial uses. Under the regulations, the PCZ allows a multitude of nonresidential uses by special permit and permits single- and two-family residential uses as of right. Therefore, the commission has failed to meet its burden to prove that the PCZ is 'located in an area which is zoned for industrial use' and 'does

not permit residential uses.' Accordingly, the industrial [zone] exception under §8-30g (g) (2) does not apply."

The court rejected the plaintiff's argument that the application should be deemed approved under §8-3 (g) (1) and agreed with the commission that "the word 'or' between §8-30g (g) (1) and (2) means that the commission may choose one or the other as the basis for its decision." As further support for its conclusion, the court stated: "Especially in the context of applications for affordable housing, in which the developments are generally large and not compliant with underlying zoning, the application is inextricably dependent upon the site plan and its other components, including the affordability plan. Consequently, the commission should conduct a robust review and deliberation of the site plan and supporting materials under §8-30g (g) ([1]). . . . This having not occurred in the present case, the court decline[d] to deem the plaintiff's application approved under §8-3 (g)." (Citation omitted.) The court also found that the commission had not waived its right to review the site plan because it did not review it under §8-30g (g) (1). The "court recognize[d] . . . and the record reveal[ed] that the plaintiff's application received the full range of staff reviews and scrutiny that an application for a land use permit in the town is typically subjected to, including scrutiny by the commission itself during the public hearings. Nor [was] it disputed that each aspect of the plaintiff's application did in fact pass muster, either on its own, or after modification and resubmittal to the respective official, office, or agency to which the commission staff referred it. Thus, [the court concluded that] a fulsome record exists upon which the commission may resume its obligation to evaluate the application under §8-30g (g) (1) of the statute."

Having concluded that the industrial zone exception did not apply to the plaintiff's application, the court sustained the plaintiff's appeal in part and remanded the matter to the commission for further proceedings on the plaintiff's application under §8-30g (g) (1). The court

further ordered that "[t]he commission may not supplement the record further with evidence or testimony and must begin its deliberations anew, with an open mind, to review the application, all documents and testimony in the record to date relating to the proposed development on the site under § 8-30g (g) (1). The commission must disregard any previous discussion before the commission and between and among the commission members about the industrial [zone] exception and any documents and testimony pertaining thereto, including the vote taken on March 21, 2023, as if it had never been heard, stated, submitted, read, or even taken place.

"Once the commission has rendered its decision, the commission's counsel shall supplement the record of these additional proceedings and the commission's decision, and the court will conduct further proceedings as necessary."

We begin our analysis of the jurisdictional argument raised by the plaintiff by recognizing that "[t]he lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. A determination regarding . . . subject matter jurisdiction is a question of law . . . . We commence the discussion of our appellate jurisdiction by recognizing that there is no constitutional right to an appeal. . . . Article fifth, § 1, of the Connecticut constitution provides for a Supreme Court, a Superior Court and such lower courts as the [G]eneral [A]ssembly shall . . . ordain and establish, and that [t]he powers and jurisdiction of these courts *shall be defined by law*. . . . To consider [a claim challenging this court's subject matter jurisdiction over an appeal], we must apply the law governing our appellate jurisdiction, which is statutory. . . . The legislature has enacted . . . [General Statutes] § 52-263, which limits the right of appeal to those appeals filed by aggrieved parties on issues of law from final judgments. Unless a specific right to appeal otherwise has been provided by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the

merits of the claim . . . . Further, we have recognized that limiting appeals to final judgments serves the important public policy of minimizing interference with and delay in the resolution of trial court proceedings." (Emphasis in original; internal quotation marks omitted.) *Torrington* v. *Council 4, AFSCME, AFL-CIO, Local 442*, 224 Conn. App. 237, 242–43, 312 A.3d 1112 (2024). "The policy concerns underlying the final judgment rule are [also] to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level. . . . The appellate courts have a duty to dismiss, even on [their] own initiative, any appeal that [they lack] jurisdiction to hear." (Internal quotation marks omitted.) *Krausman* v. *Liberty Mutual Ins. Co.*, 195 Conn. App. 682, 687, 227 A.3d 91 (2020).

"Thus, [a]s a general rule, an interlocutory ruling may not be appealed pending the final disposition of a case. . . . In determining whether a judgment or a ruling is an immediately appealable final judgment, courts have routinely looked to a statute's text to see if the legislature has provided an express right to appeal. . . . In those instances [in which] the legislature has not provided such an express right, our courts then continue to consider whether the right at issue implicates one of the two prongs set forth in *State* v. *Curcio*, [191 Conn. 27, 31, 463 A.2d 566 (1983)]." (Internal quotation marks omitted.) *Torrington* v. *Council 4, AFSCME, AFL-CIO, Local 442*, supra, 224 Conn. App. 243.

In *Curcio*, our Supreme Court determined that an otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them. *State* v. *Curcio*, supra, 191 Conn. 31.

" 'The "separate and distinct" requirement of *Curcio* demands that the proceeding which spawned the appeal be independent of the main action. . . . This means that the "separate and distinct proceeding," though related

to the central cause, must be severable therefrom. The question to be asked is whether the main action could proceed independent of the ancillary proceeding.'" *Lakeside Estates, LLC* v. *Zoning Commission*, 100 Conn. App. 695, 700, 919 A.2d 1044 (2007). Finally, as this court has observed, "the final judgment rule applies equally to zoning appeals as to other appeals." Id., 699.

To satisfy the first prong of the *Curcio* test for finality, one would have to show that the trial court's determination that the industrial zone exception under §8-30g (g) (2) did not apply terminated a separate and distinct proceeding. The record does not demonstrate this. Before the commission was the plaintiff's application for approval of its site plan to construct affordable housing in a certain area of Glastonbury. As previously noted, following the plaintiff's appeal to the Superior Court, the commission bore the burden of proving, on the basis of the evidence in the record compiled before it, that its denial of the plaintiff's application was proper because (1) the conditions set forth in §8-30g (g) (1) were satisfied *or* (2) the industrial zone exception codified in §8-30g (g) (2) applied. Thus, the plaintiff submitted evidence before the commission in support of approval of its application under §8-30g (g) (1). The commission, however, denied the application on the sole ground that the industrial zone exception applied. Because the trial court determined that the exception did not apply, it agreed with the commission that the commission was entitled to a review of the site plan under §8-30g (g) (1) and therefore remanded the case to the commission for further proceedings. Indeed, in its memorandum of decision, the court observed that, although the commission argued that its finding that the industrial zone exception applied "effectively denied the site plan," it nonetheless agreed that, "if the court were to remand the commission's decision [for further proceedings under §8-30g (g) (1)] . . . the record on this application would be sufficient for the commission to renew its deliberations." The trial court's determination that the industrial zone exception did not apply, therefore, did not terminate a separate and distinct

proceeding. Rather, the court's determination required it to remand the case for further proceedings on the merits of the plaintiff's application for affordable housing and whether §8-30g (g) (1) applied. Thus, the first prong of *Curcio* has not been met.

We next consider whether there is an appealable final judgment pursuant to *Curcio*'s second prong, i.e., that the determination by the trial court that the industrial zone exception does not apply so concludes the rights of the parties that further proceedings cannot affect them. "[F]or an interlocutory ruling in either a criminal or a civil case to be immediately appealable under the second prong of *Curcio*, certain conditions must be present. There must be (1) a colorable claim, that is, one that is superficially well founded but that may ultimately be deemed invalid, (2) to a right that has both legal and practical value, (3) that is presently held by virtue of a statute or the state or federal constitution, (4) that is not dependent on the exercise of judicial discretion and (5) that would be irretrievably lost, causing irreparable harm to the appellants without immediate review." (Internal quotation marks omitted.) *Wells Fargo Bank of Minnesota, N.A.* v. *Jones*, 85 Conn. App. 120, 125, 856 A.2d 505 (2004).

The commission has statutory authority in zoning matters, including the authority to apply relevant regulations in acting on the plaintiff's application. See General Statutes §8-1 (a) (municipality is authorized to "exercise through a zoning commission the powers granted [under chapter 124 of the General Statutes]"). The commission, however, is unable to demonstrate that it has a colorable claim to a right, of legal and practical value and not dependent on the exercise of judicial discretion, that is presently held by it and which would be irretrievably lost in the absence of immediate review of the trial court's decision to sustain the plaintiff's appeal. Indeed, there is no basis to conclude that any change involving the subject property will occur imminently, as the purpose of the proceedings on remand is to determine whether the

plaintiff's application should be approved under § 8-30g (g) (1). Our judgment dismissing this appeal does not prohibit the commission from appealing from the trial court's decision that the industrial zone exception does not apply in this case if, following the proceedings on remand related to § 8-30g (g) (1) and any zoning appeal related thereto, the commission is aggrieved by a final judgment concerning the application.

"The second prong of the *Curcio* test focuses on the nature of the rights involved. It requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [parties] irreparably harmed unless they may immediately appeal. . . . One must make at least a colorable claim that some recognized statutory or constitutional right is at risk." (Internal quotation marks omitted.) *In re Marcquan C.*, 202 Conn. App. 520, 533–34, 246 A.3d 41, cert. denied, 336 Conn. 924, 246 A.3d 492 (2021).

"There is a narrow category of cases allowing an immediate interlocutory appeal under the second prong of *Curcio*. The cases involve monetary loss that cannot be recouped upon subsequent appeal . . . or involve custody of a child during the course of dissolution proceedings [that] cannot otherwise be vindicated at any time, in any forum . . . or involve reinstatement in an employment dispute involving wages that cannot be recovered even if the defendant eventually wins . . . or involve a claim of sovereign immunity that grants immunity not only from liability but from suit itself." (Internal quotation marks omitted.) *Wells Fargo Bank of Minnesota, N.A.* v. *Jones*, supra, 85 Conn. App. 125–26. The commission has not established that the present appeal falls into this narrow category of cases.

This court's decision in *Barry* v. *Historic District Commission*, 108 Conn. App. 682, 950 A.2d 1, cert. denied, 289 Conn. 942, 959 A.2d 1008 (2008), and cert. denied, 289 Conn. 942, 959 A.2d 1008 (2008), is instructive with respect to our application of the *Curcio* test in the

present case. *Barry*, like the present case, involved a remand order from the trial court in a zoning appeal. In *Barry*, the historic district commission of the borough of Litchfield denied the application for a certificate of appropriateness as to exterior architectural features filed by the plaintiff for proposed changes to the facade of her house. Id., 683. On appeal from the commission's decision, the trial court sustained the plaintiff's appeal. Id. The commission appealed from that judgment, claiming that the court improperly determined that the plaintiff's right to fundamental fairness had been violated because a commission member, who recused himself from voting on the application, testified adversely to the proposal as an expert and as a member of the general public at the time of the public hearing. Id. The plaintiff filed a cross appeal, claiming that the court improperly determined that her application was not automatically approved when the commission failed to comply with the time requirements set forth in General Statutes § 7-147e (b) and that the recused commission member did not violate the commission's bylaws when he testified at the public hearing. Id., 683–84.

After the filing of the appeal and the cross appeal, the trial court issued an articulation, pursuant to an order of this court, issued sua sponte, in which it stated that it "implicitly remanded the case to the defendant commission for a new hearing." (Internal quotation marks omitted.) Id., 684. The commission amended its preliminary statement of issues by adding the claim that this court lacked jurisdiction because the trial court's decision was not a final judgment. Id. In concluding that the trial court's decision was a final judgment, this court conducted an exhaustive review of cases involving the determination of final judgments in zoning appeals, particularly where the trial court issues a remand order. Id., 688–97.

This court, following its review of relevant precedent, observed that "there are three general types of remands

in administrative appeals that give rise to final judgment concerns. Two of them are analyzed in *Schieffelin & Co.* [v. *Dept. of Liquor Control*, 202 Conn. 405, 521 A.2d 566 (1987)].[4] The first remand discussed in *Schieffelin & Co.* is a remand that involves a second hearing on the very issue that the agency already decided. An appeal will lie from such a remand. This type of remand may be implicit, as where a trial court simply sustains an appeal without any further orders. See *Schieffelin & Co.* v. *Dept. of Liquor Control*, supra, [410]. The second type of remand addressed in *Schieffelin & Co.* is a remand that requires that the agency hold a new hearing on an issue that it has never before considered. In that event, the trial court's judgment may not be immediately appealed because the agency proceedings are incomplete; it has not finished adjudicating the application or petition before it. Id. The third type of remand is discussed in *Kaufman* [v. *Zoning Commission*, 232 Conn. 122, 653 A.2d 798 (1995)]. This type of remand, which is most often encountered in zoning cases, consists of an order that requires the agency to grant or approve a permit or other application. The remand order also addresses any conditions that may attach to the agency's action and may require further proceedings as to the conditions. If the remand as to the conditions requires a hearing at which the agency will need to exercise it[s] discretion, the remand is not a final judgment. On the other hand, if further proceedings on the conditions will entail only ministerial determinations, the remand is a final judgment. *Kaufman* v. *Zoning Commission*, supra, [130–31].

---

[4] "The holding in *Schieffelin & Co.* has been superseded by statute for cases appealed pursuant to the Uniform Administrative Procedure Act [UAPA], General Statutes § 4-166 et seq. The legislature amended the act in 1988, explicitly providing that where the court issues a remand pursuant to General Statutes § 4-183 (j), the remand is a final judgment for purposes of appeal irrespective of the nature of the remand and the administrative proceedings that are expected to follow it." *Barry* v. *Historic District Commission*, supra, 108 Conn. App. 690 n.3. The present case is not an administrative appeal under the UAPA but, rather, a zoning appeal under the affordable housing statute, § 8-30g (g).

Under either *Kaufman* scenario, the applicant will not be deprived of the permit or approval that it originally sought, but whether the trial court has rendered a final judgment will depend on whether the commission has completed its discretionary action." (Footnote added.) *Barry* v. *Historic District Commission,* supra, 108 Conn. App. 699–700.

In the present case, the court in its conclusion and order stated: "At oral argument before this court in discussing how the matter should proceed if the court were to remand the commission's decision, the commission's counsel agreed that the record on this application would be sufficient for the commission to renew its deliberations.

"Thus, as the industrial [zone] exception does not apply to the plaintiff's application, the court hereby sustains the plaintiff's appeal in part and remands the matter to the commission for further proceedings on the plaintiff's application under §8-30g *(g)* (1). The commission may not supplement the record further with evidence or testimony and must begin its deliberations anew, with an open mind, to review the application, all documents and testimony in the record to date relating to the proposed development on the site under §8-30g *(g)* (1). The commission must disregard any previous discussion before the commission and between and among the commission members about the industrial [zone] exception and any documents and testimony pertaining thereto, including the vote taken on March 21, 2023, as if it had never been heard, stated, submitted, read, or even taken place.

"Once the commission has rendered its decision, the commission's counsel shall supplement the record of these additional proceedings and the commission's decision and the court will conduct further proceedings as necessary."

The present case fits within the second type of remand that this court in *Barry* stated was addressed in *Schieffelin & Co.*, which is "a remand that requires that the

agency hold a new hearing on an issue that it has never before considered. In that event, the trial court's judgment may not be immediately appealed because the agency proceedings are incomplete; it has not finished adjudicating the application or petition before it." *Barry* v. *Historic District Commission*, supra, 108 Conn. App. 700.

In *Schieffelin & Co.*, our Supreme Court dismissed the defendants' appeal from the trial court's ruling remanding the case to the defendant Department of Liquor Control. *Schieffelin & Co.* v. *Dept. of Liquor Control*, supra, 202 Conn. 408. The remand order directed the Department of Liquor Control to determine whether the plaintiff substantively had established cause for its termination of the individual defendants' distributorships. Id. In concluding that the decision was not a final judgment, the court provided the following analysis: "Under our existing case law, we have distinguished, with reference to that question, between two kinds of administrative remands. A trial court may conclude that an administrative ruling was in error and order further administrative proceedings on that very issue. In such circumstances, we have held the judicial order to be a final judgment, in order to avoid the possibility that further administrative proceedings would simply reinstate the administrative ruling, and thus would require a wasteful second administrative appeal to the Superior Court on that very issue. See, e.g., *Watson* v. *Howard*, 138 Conn. 464, 468, 86 A.2d 67 (1952); *Santos* v. *Publix Theatres Corp.*, 108 Conn. 159, 161, 142 A. 745 (1928). A trial court may alternatively conclude that an administrative ruling is in some fashion incomplete and therefore not ripe for final judicial adjudication. Without dictating the outcome of the further administrative proceedings, the court may insist on further administrative evidentiary findings as a precondition to final judicial resolution of all the issues between the parties. See General Statutes § 4-183 (e). Such an order is not a final judgment." *Schieffelin & Co.* v. *Dept. of Liquor Control*, supra, 410.

*Watson* v. *Howard*, supra, 138 Conn. 464, a zoning appeal, is also instructive. In that case, the plaintiff appealed an order of the Norwalk zoning board of appeals. Id., 465. The trial court sustained the appeal because of a member's improper participation in the board's decision and remanded the matter to the board for another hearing. Id., 467. The defendants challenged the jurisdiction of our Supreme Court to hear the appeal, claiming that the judgment of the trial court was not final. Id. In concluding that the judgment was final, the Supreme Court stated: "The test of finality is whether the rights of the parties are concluded so that further proceedings cannot affect them. . . . The judgment in question met that test. The rights of the parties, in so far as they were capable of being affected by any subsequent proceedings connected with the matter then in court, were forever concluded. Nothing further remained to be decided by the court. The appeal was terminated. The issues which it presented were all resolved. If a new hearing should be held and if the board should again reach a conclusion adverse to the plaintiff, he would be required to institute a new appeal to the [Superior Court]. It follows from what we have said that the judgment was a final one from which an appeal to this court lies." (Citations omitted.) Id., 467–68.

The common thread of *Watson*, *Kaufman* and *Schieffelin & Co.* is that, if a trial court remands a case for a substantive decision on an issue that should have been decided on the basis of the administrative record, the judgment is not final. "A judgment of remand [to a zoning commission] is not final . . . if it requires [the agency to make] further evidentiary determinations that are not merely ministerial." (Internal quotation marks omitted.) *Barry* v. *Historic District Commission,* supra, 108 Conn. App. 691. In contrast, "a trial court's remand to a zoning commission is an appealable final judgment if it (1) does not require further evidentiary determinations by the commission or (2) dictates the outcome of the post-remand proceedings before the commission with respect

to the application at issue." (Internal quotation marks omitted.) Id., 694–95.

Here, the plaintiff appealed the commission's application of the industrial zone exception under §8-30g (g) (2) *and* the commission's refusal to act on the site plan application even though it had a complete administrative record for doing so. As previously discussed, the plaintiff also claimed on appeal to the trial court that the site plan should have been automatically approved under §8-3 (g) (1). The court sustained the plaintiff's appeal as to the industrial zone exception; however, it rejected the plaintiff's argument that the application should be automatically approved. Instead, the court acknowledged that the merits of the site plan application had not been addressed by the commission under §8-30g (g) (1) and remanded the case to the commission for evidentiary determinations, based on the existing record, on the merits of the plaintiff's site plan application under that provision. Specifically, the court's remand order directed the commission to "begin its deliberations anew, with an open mind, to review the [site plan] application, all documents and testimony in the record to date relating to the proposed [affordable housing] development on the site under §8-30g (g) (1)." Thus, because the court ordered further evidentiary determinations by the commission, the rights of the parties had not been fully adjudicated. The court's remand order directs further deliberation and action by the commission on an issue that was clearly before it based on the existing administrative record but not addressed. For the foregoing reasons, the decision from which the commission appeals is not a final judgment.

The appeal is dismissed.

In this opinion the other judges concurred.